THE STATE EX REL. CONSOLIDATED FREIGHTWAYS,
APPELLANT, *v.* ENGERER ET AL., APPELLEES.

[Cite as *State ex rel. Consol. Freightways
v. Engerer* (1996), 74 Ohio St.3d 241.]

(No. 94–951—Submitted November 7, 1995—Decided January 10, 1996.)

242

244

*Porter, Wright, Morris & Arthur, Darrell R. Shepard* and *Christopher C. Russell,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Dennis L. Hufstader,* Assistant Attorney General, for appellee Industrial Commission.

*Per Curiam.* R.C. 4123.56(B) reads:

"Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compensation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks."

Ohio Adm.Code 4121–3–32(D) states:

"In injury claims in which the date of injury * * * is on or after August 22, 1986, the payment of compensation [for] wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:

"(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.

"(2) The employee returns to his former position but suffers a wage loss.

"(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss."

Claimant's wage-loss motion is premised on his alleged inability to (1) return to his former position of employment due to the physical restrictions imposed and (2) find other work within those restrictions. Recovery under this theory requires that the claimant actually sought work within his capacities. At issue is the quality of this search for two periods: January 12, 1989 through June 21, 1990; and March 2, 1991 through May 1, 1992.

The commission did not address the quality of claimant's job search for the period covering January 12, 1989 through June 21, 1990. The original June 22, 1990 staff hearing officers' award was premised *solely* on Consolidated's inability to provide claimant with suitable work. The commission never examined claimant's ability to secure *other* employment, which is the purpose behind wage-loss compensation—to return claimant to some type of remunerative employment, regardless of employer.

This deficiency was not remedied in later administrative proceedings. The June 8, 1992 staff hearing officers' order declined to address this period, finding that the previous staff hearing officer order had rendered the issue moot. This reasoning is somewhat unclear. The appellate referee suspected—probably accurately—that the staff hearing officers meant to declare the issue *res judicata*, not moot. In either event, the commission erred.

The June 22, 1990 award of wage loss from January 12, 1989 through June 21, 1990 is not *res judicata* because the order never became final. Consolidated's motion for reconsideration was never acted upon and remains open. Since claimant's wage-loss entitlement is still an open question, the job search issue cannot be moot.

The commission also did not address the work search issue from January 12, 1989 through June 21, 1990. It did address the matter over the period from March 2, 1991 to May 1, 1992, affirmatively finding that claimant had sought employment over the latter period. However, the commission's discussion said nothing about the *adequacy* of the work search.

The commission's failure to examine these critical issues dictates a return to the commission for further consideration. Contrary to Consolidated's representation, *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, does

not compel a contrary result. Our review of the record reveals conflicting evidence, omitted information, and credibility issues. The evidence is not, therefore, so one-sided as to favor relief pursuant to *Gay*. Moreover, given this disposition, it is premature to address Consolidated's allegations of fraud.

Accordingly, that portion of the judgment of the court of appeals that upheld the payment of wage-loss compensation from March 2, 1991 through May 1, 1992 is reversed. The balance of the judgment is affirmed, and the commission is ordered to give further consideration to the issue of wage-loss eligibility over the disputed periods and to issue an amended order.

*Judgment reversed in part,*
*affirmed in part*
*and limited writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

WRIGHT, J., dissents.

DOUGLAS, J., concurring in part and dissenting in part. I concur with the majority in its judgment to reverse the court of appeals regarding payment of wage-loss compensation from March 2, 1991 through May 1, 1992. I respectfully dissent from that part of the judgment of the majority which affirms the judgment of the court of appeals in ordering the commission to give further consideration to the issue of wage-loss eligibility over the periods disputed by appellant-employer. I would enter an order reversing the judgment of the court of appeals in its entirety and order the commission to vacate its orders of June 22, 1990 and June 8, 1992. I would further order that claimant had no entitlement to wage-loss compensation for the periods of January 12, 1989 to June 21, 1990 and March 2, 1991 to May 1, 1992.

This case is a good example of why there are continuing calls for workers' compensation "reform." While I would stop just short of finding that claimant committed fraud, clearly the indicia are there. The record is replete with claimant's bad faith. I cannot say it better than a district hearing officer said it in an order of April 25, 1991: "All of the above taken together raise doubt as to the credibility of claimant's sworn C–94A and transcript statements as to both his actual wage earnings as well as his attempts to find work consistent with his capabilities."

While admittedly *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 534 N.E.2d 46, dealt with the issue of temporary total disability, nevertheless I believe that what I said in my concurrence in that case applies as well to questions of wage-loss compensation. In *Lancaster*, I said: "We should recog-

nize that the vast (overwhelming) majority of employers do not want an employee to be cut off from compensation to which the employee is entitled when that employee has been injured doing the employer's work. Conversely, employers do not want to be 'ripped off' by employees who are not making an effort to seek rehabilitation and return to work where such course is indicated. In sum, employers want deserving injured employees to be taken care of, but do not want temporary total benefits to continue when such benefits are neither warranted nor proper." *Id.* at 417, 534 N.E.2d at 58 (Douglas, J., concurring).

I believe that any fair reading of the record in this case leads to the conclusion that claimant was "ripping off" Consolidated. He was shown to be untruthful in both his oral testimony and in some of the documents he submitted. Accordingly, I believe that the appellant-employer, Consolidated, is entitled to final judgment in its favor, thereby permitting it reimbursement from the surplus fund.

One last point. Having heard employers and their representatives severely criticize *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E.2d 666, I find it more than just interesting that Consolidated favorably cites *Gay* in its first proposition of law and three more times in its brief. Consolidated says that "[g]iven the record in this case, what purpose could possibly be served by returning this cause to the commission for it to attempt to justify its position? See *Gay, supra,* at 323 [626 N.E.2d at 673]." I guess our view of things sometimes depends on whose ox is being gored.

For the foregoing reasons, I concur in part and dissent in part.

WRIGHT, J., dissenting. I part company with the majority for much the same reasons expressed by Justice Douglas in his dissent. I continue to believe that *Gay* should be applied sparingly. However, in this case there was a clear abuse of discretion by the commission. Thus, I respectfully dissent.