[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 140.]

THE STATE EX REL. TUMBLESON, APPELLANT, *v*. EATON CORPORATION ET AL., APPELLEES.

[Cite as *State ex rel. Tumbleson v. Eaton Corp.*, 1999-Ohio-306.]

*Workers' compensation—Industrial Commission's denial of application for wage-loss compensation an abuse of discretion, when—Adequacy of claimant's job search—Court of appeals' judgment reversed and cause returned to commission for further consideration and amended order.*

(No. 97-1009—Submitted June 22, 1999—Decided November 3, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD06-745.

––––––––––––––

{¶ 1} Appellant-claimant, Gary L. Tumbleson, injured his low back and right knee in the course of and arising from his employment with appellee Eaton Corporation. The latter injury prompted two surgeries and continued to plague claimant. By 1993, examining physicians agreed that claimant could not return to his former position of employment and was limited to sedentary work.

{¶ 2} In 1994, claimant applied for wage-loss compensation. Submitted in support of his application was a more than one-hundred-page record of job contacts. The claimant's weekly job search log (submitted on a form prepared by appellee Bureau of Workers' Compensation) asked claimant to list, among other things, (1) the prospective employer's name, address, and phone number, (2) description of job sought, (3) the contact person, (4) the date of contact, and (5) the results of the contact. In the last category, claimant frequently indicated in the job log that the contacted employer was not hiring. Other notations indicated that the prospective job exceeded claimant's abilities either medically or vocationally.

{¶ 3} A district hearing officer with appellee Industrial Commission of Ohio denied claimant's application, writing:

"* * * [T]he claimant failed to support his motion with sufficient evidence of a good faith job search effort in Florida.

"His work search effort was deficient for the following reasons:

"(1) The claimant is not qualified for many of the positions for which he has applied;

"(2) Other positions for which the claimant has applied involve too much standing;

"(3) It is not clear whether many of the positions are within the claimant's medical restrictions."

{¶ 4} The order was administratively affirmed.

{¶ 5} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his application for wage-loss compensation. The court of appeals denied the writ.

{¶ 6} This cause is now before this court upon an appeal as of right.

_____

*Livorno & Arnett Co., L.P.A., John F. Livorno* and *Charles W. Kranstuber*, for appellant.

*Vorys, Sater, Seymour & Pease* and *Richard M. Rolwing*, for appellee Eaton Corporation.

*Betty D. Montgomery*, Attorney General, and *Gerald H. Waterman*, Assistant Attorney General, for appellees Bureau of Workers' Compensation and Industrial Commission.

_____

***Per Curiam.***

{¶ 7} At issue is the adequacy of claimant's job search. Adequacy is assessed case-by-case, and involves many factors, the most common being number and character of job contacts. *State ex rel. Vanover v. Emery Worldwide* (1997), 80 Ohio St.3d 367, 686 N.E.2d 518. Both, to differing degrees, are raised here.

**{¶ 8}** Numerically, claimant's job contacts are voluminous, with hundreds of contacts listed. No one, moreover, has alleged that the contacts were fabricated. The commission, however, concluded that so many of these contacts were made in bad faith as to taint the entire search and compel its disqualification.

**{¶ 9}** The commission's determination was premised on its belief that many of the positions sought exceeded claimant's medical or vocational capacities. *Vanover* indeed permits the exclusion of such contacts, but there are two problems with presently using this principle to invalidate claimant's entire job search.

**{¶ 10}** First, *Vanover* does not compel automatic disqualification by the commission of job contacts outside of a claimant's capacities. Such discretion is crucial. In evaluating the legitimacy of a job contact, an important consideration should be whether the claimant knew or should have known that a position exceeded his or her qualifications, but applied anyway.

**{¶ 11}** Such knowledge is obvious where claimant is responding to an ad or posting that clearly informs the claimant that he or she is unqualified. It can also, in some instances, be inferred from the type of business. For example, a claimant with sedentary restrictions should not, in good faith, be applying for a foundry or a steel-mill worker position.

**{¶ 12}** On the other hand, when a prospective employee is contacting an employer cold, there is often no way to know until he or she actually speaks to the employer (1) whether the employer is even hiring, (2) what positions are available, and (3) what the position's qualifications are. In such a situation, an unfavorable response to one of these questions should not turn what started as an optimistic good-faith inquiry into one of bad faith.

**{¶ 13}** In this case, we do not know how the claimant went about his job search. Thus, we do not know whether claimant was applying for jobs that he knew he could not do. His job log sheds little light on this question, since there are few

businesses listed that obviously suggest work beyond his capacities. Further commission inquiry is therefore warranted.

{¶ 14} We also stress that while *Vanover* indeed permits the commission to exclude bad-faith contacts, it does not permit it to ignore the good contacts. That case, as here, involved many contacts. Responding to this similar situation, we wrote:

"Claimant has submitted hundreds of individually copied classified ads to which she purportedly responded. It appears nearly half of those, however, were for jobs that were clearly beyond claimant's abilities either physically, academically (high school and beauty college), or in terms of required experience. This prompted the commission to find that claimant's job search was done in bad faith.

"It was within the commission's discretion to find that these contacts did not go toward a good-faith search. The problem, in our eyes, with invalidating the entire search on this basis, however, is that it ignores the number of legitimate contacts that claimant did make. If half of the total contacts were bad, then half of them are good, and, in this case, half of the total is substantial. Claimant is, in effect, being penalized for her over-zealous job search, for had she simply submitted her 'good' contacts, the commission may have reached a different result." *Id*. at 369-370, 686 N.E.2d at 521.

{¶ 15} For this reason, the judgment of the court of appeals is reversed, and a limited writ is issued returning the cause to the commission for further consideration and amended order.

*Judgment reversed*

*and limited writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

————————————

**COOK, J., dissenting.**

{¶ 16} I would affirm the judgment of the court of appeals. I agree with the magistrate's conclusion, as adopted by the court of appeals, that the commission correctly determined that claimant failed to demonstrate that his lack of work was a direct result of his industrial injury.

————————————