DECISION
{¶ 1} Relator, Jimmie L. Jordan, Jr., has filed this original action in mandamus, requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying wage-loss compensation under R.C. 4123.56(B) and to issue a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator has failed to demonstrate that respondent commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate essentially rearguing issues already adequately addressed in that decision. For the reasons stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objection overruled; writ denied.
BRYANT and WATSON, JJ., concur.
 DECISION IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Jimmie L. Jordan, Jr., asks the court to issue a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying wage-loss compensation under R.C. 4123.56(B) and to issue a new order granting the requested compensation.
Findings of Fact:
 {¶ 6} 1. On September 28, 2000, Jimmie L. Jordan, Jr. ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for a fractured left wrist.
 {¶ 7} 2. Glenn Carlson, M.D., claimant's treating physician, stated that claimant could not use his left arm/hand for any work activities.
 {¶ 8} 3. The employer provided alternative work that did not require use of the left arm/hand. Claimant returned to work in October 2000, and he was paid at the same rate as he previously earned.
 {¶ 9} 4. In May 2001, claimant filed a motion for wage-loss compensation benefits beginning October 2, 2000, based on working wage loss. Although the basic rate of pay was the same, claimant asserted that he had sustained a wage loss because he was no longer working substantial overtime.
 {¶ 10} 5. In support of the motion, claimant submitted a report from Dr. Carlson stating that, from October 2000 to May 25, 2001, claimant could walk, sit or stand for eight hours per day, use the right hand to lift up to ten pounds continuously, use the right hand for pushing/pulling/grasping and fine manipulation, and use foot controls, but that claimant cannot use his left hand for lifting/pushing/pulling/grasping or fine manipulation.
 {¶ 11} 6. In July 2001, the motion for wage-loss compensation was heard by a district hearing officer who denied it:
 {¶ 12} "Lastly, the issue of lost overtime is proposed to support claimant's loss of wages. The parties stipulate that claimant was paid at the same hourly rate post-injury. Any loss in overtime would appear to be related to any number of factors. There is insufficient evidence to link claimant's loss of wages to the injury of 09/28/2000.
 {¶ 13} "This order is based on the report of Dr. Patel and claimant's testimony concerning the overtime policy, multiple factors used to determine [h]is over time."
 {¶ 14} 7. On administrative appeal, a staff hearing officer ruled as follows:
 {¶ 15} "The Staff Hearing Officer DENIES Wage Loss Compensation from 10/2/2000 through 5/25/2001.
 {¶ 16} "The Staff Hearing Officer finds, during the period in question, the claimant does have restrictions as a result of the injury herein and could not return to his former position of employment.
 {¶ 17} "The claimant began working in a light duty capacity and was paid at the exact same hourly rate as before his injury.
 {¶ 18} "The claimant's Average Weekly Wage includes overtime wages paid in the year prior to this injury which is an appropriate calculation.
 {¶ 19} "Therefore, since claimant returned to work and was paid the exact same hourly rate as he was paid pre-injury, the only decrease in actual earnings in the light duty job is a lack of overtime pay.
 {¶ 20} "The Staff Hearing Officer finds a lack of * * * competent evidence that would show that those employees in claimant's former position of employment were offered and working overtime during the period in question or that claimant would have accepted such overtime if offered.
 {¶ 21} "The Staff Hearing Officer finds Wage Loss Compensation cannot be granted based on a speculation of how much overtime the claimant would have gotten. Therefore, Wage Loss Benefits for 10/2/2000 through 5/25/2001 are not payable."
 {¶ 22} 8. Further appeal was refused.
Conclusions of Law:
 {¶ 23} In this original action in mandamus, claimant argues that he submitted sufficient evidence to prove that his industrial injury caused his reduction in earnings and that the commission abused its discretion in denying compensation for working wage loss under R.C.4123.56(B).
 {¶ 24} The magistrate accepts the proposition that overtime pay may be a normal part of a worker's regular earnings and that an industrial injury may cause the loss of that overtime pay, constituting a compensable wage loss under R.C. 4123.56(B). The loss of overtime pay may be caused by a variety of injury-related reasons, such as being medically restricted from working more than 40 hours per week due to the allowed conditions. E.g., State ex rel. Sherwin Williams Co. v. Indus. Comm. (Mar. 29, 2001), Franklin App. No. 00AP-735.
 {¶ 25} On the other hand, the magistrate also accepts the proposition that the availability of overtime work is subject to many vagaries in a business. Overtime hours may increase or decrease for any number of reasons, such as product demand and supply of workers. In short, a reduction in overtime hours may result from reasons having nothing to do with an industrial injury.
 {¶ 26} Depending on the evidence presented in each case, the commission has the task of deciding whether claimant has demonstrated that a loss of overtime hours was caused by the industrial injury. See, generally, State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St.3d 18 (stating that issues of weight and credibility of evidence lie outside the scope of mandamus inquiry); State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165, 167 (stating that "questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers of fact finding"); State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577 (reiterating that the commission has exclusive authority to evaluate evidentiary weight and credibility); State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373 (stating that the commission alone is responsible for evaluating evidentiary weight and credibility).
 {¶ 27} In general, proving a compensable wage loss involves three elements. First, the statute requires that claimant must establish that the allowed conditions have resulted in medical restrictions that prevent him from returning to the job at which he was injured.
 {¶ 28} Second, the claimant must establish a reduction in wages. This is accom-plished by taking the weekly wage prior to the injury (in most cases, the average of the 52 weeks of wages before the injury is the average weekly wage ["AWW"], pursuant to R.C. 4123.61), and then comparing the AWW with the post-injury wages for those weeks at issue. Where overtime pay constituted a normal part of a worker's regular earnings during the year before the injury, that will be reflected in the AWW and in the full weekly wage ("FWW"), and, therefore, pre-injury overtime is ordinarily part of the calculation for determining a reduction in wages. As to the worker's willingness to work overtime, that is a question for the commission as the finder of fact. However, the amount of overtime that the claimant worked during the pre-injury year is reflected in the AWW, which may serve as a reasonable barometer of the worker's willingness to accept overtime hours. See Sherwin Williams, supra (upholding commission's order as based on "some evidence" in the record). The commission, of course, may take other evidence on the matter, such as the worker's testimony, which it may or may not find persuasive. Pass, supra (noting that, in mandamus, the court must uphold the commission's order when supported by some evidence, regardless of whether other evidence in the record, greater in quantity or quality, supports the contrary result).
 {¶ 29} The Ohio Supreme Court has held that the existence of a loss of wages is determined on a week-by-week basis. State ex rel. Haddox v. Indus. Comm. (2000), 88 Ohio St.3d 279. In Haddox, the evidence showed that, after his injury, the worker sometimes earned less than his pre-injury weekly wage. However, the payroll records also showed that he sometimes earned more, because he sometimes worked substantial overtime after the injury. The Ohio Supreme Court held that a week-by-week comparison was required, thus rejecting the notion that the post-injury earnings should be averaged. Thus, Haddox stands for the principle that, under the law in effect at that time, the injured worker was eligible for wage-loss compensation in any post-injury week during which his earnings were less than his former weekly wage.
 {¶ 30} As to the third element of proof, the Ohio Supreme Court has made clear that the claimant must prove not only a reduction in earnings, but must also prove that the allowed conditions were the cause of that reduction. The mere fact that an injured worker has returned to other work within his residual capacity and receives lower wages for that work does not establish that his injury was the cause of the reduction in wages. E.g., State ex rel. Tullis v. City Asphalt Paving Co. (1997), 80 Ohio St.3d 364.
 {¶ 31} It is well established that the claimant has the burden of proving that the industrial injury was the cause of the reduction in wages. Id. See, also, State ex rel. Ooten v. Siegel Interior Specialists Co. (1998), 84 Ohio St.3d 255; Streeter v. Indus. Comm. (Jan. 11, 1994), Franklin App. No. 92AP-1467; State ex rel. Watts v. Schotten-stein Stores Corp. (1993), 68 Ohio St.3d 118.
 {¶ 32} There are a variety of ways to establish this causal link, depending on the circumstances. For example, in cases where a claimant has taken a lower paying job with a different employer, he can establish causation by presenting evidence that he searched for comparably paying employment before accepting the lower paying job. Evidence of a good-faith job search tends to prove causation by the industrial injury because it negates some of the other potential causes for the wage loss by showing that claimant did not find comparably paying work despite a diligent search. See, generally, State ex rel. Chora v. Indus. Comm. (1996), 74 Ohio St.3d 238; State ex rel. Consol. Freightways v. Engerer (1996), 74 Ohio St.3d 241; State ex rel. Vanover v. Emery Worldwide (1997), 80 Ohio St.3d 367. In cases where an injured worker starts his own business after becoming disabled, there may be many reasons for a lack of earnings, and it can be difficult for a claimant to establish that his reduction in earnings was caused by his medical restrictions rather than some business reason unrelated to the injury. Ooten, supra. Nonetheless, it remains claimant's burden to prove that the reduction in earnings while performing alternate work was caused by the medical restrictions rather than other causes. E.g., Watts, supra; State ex rel. LTV Steel Co. v. Indus. Comm. (1999), 85 Ohio St.3d 75; State ex rel. Carnahan v. Indus. Comm. (1999), 86 Ohio St.3d 67.
 {¶ 33} In the present action, claimant presented payroll evidence to show the actual wages he earned prior to injury. To the extent that those pre-injury wages regularly included pay for overtime hours, his AWW and FWW would reflect those earnings. Claimant also presented payroll evidence to show the wages earned while performing the alternative work after the injury. Thus, claimant showed a reduction in wages. Indeed, the commission accepted that there had been a decrease in weekly wages, and the commission accepted that the decrease resulted from a lack of overtime hours, noting that the pay rate was the same for both jobs.
 {¶ 34} However, the record before the court does not include any evidence that claimant was medically restricted from working overtime hours. Cf. Sherwin Williams. Nor does the record include evidence that claimant had been moved to a job where there was no chance for overtime hours. The record includes no statement from a supervisor or from claimant that the new assignment excluded the opportunity for overtime. For example, the record does not include evidence that the employer did not offer overtime work to claimant because his left wrist was injured. In short, the record includes no evidence to show why claimant did not receive overtime hours. In its order, the commission suggested that claimant could have established causation by presenting evidence that his prior job still provided the opportunity for overtime, which would have been one way to establish causation, although not the only way.
 {¶ 35} Claimant argues that the employer had the burden of proving why claimant was not working overtime. The magistrate recognizes that, in some circumstances, wage-loss compensation may be granted in the absence of rebuttal evidence from the employer. For example, when the claimant has presented evidence that her medical restrictions caused the lack of overtime hours, the employer may rebut that argument by presenting evidence that overtime was reduced plant-wide for economic reasons. In Sherwin Williams, supra, claimant presented evidence that her pre-injury job included overtime and then presented evidence that she was medically unable to work more than 40 hours per week following her industrial injury, which the court found sufficient to establish causation of the reduction in earnings. However, notwithstanding claimant's medical evidence of inability to continue performing overtime, the employer might have rebutted her causation argument by presenting evidence that no overtime was available during certain weeks regardless of workers' capacities to perform it. Id. In the present action, however, there is simply no evidence in the record as to why claimant was not working overtime during the subject period of time. Given claimant's burden of proof, the commission was within its discretion to conclude that claimant had not established that his lack of overtime hours was caused by his industrial injury.
 {¶ 36} The magistrate concludes that claimant has not proven an abuse of discretion by the commission and recommends that the court deny the requested writ of mandamus.