DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, AFG Industries, Inc. d/b/a AP Technoglass Company ("relator"), filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding wage loss compensation to respondent, Danny M. Diener ("respondent"), for the period beginning February 4, 2002.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On October 14, 2003, the magistrate rendered her decision, including findings of fact and conclusions of law, wherein she recommended denial of the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which objections are now before the court. For the reasons that follow, we sustain relator's objections and grant a writ of mandamus.
 {¶ 3} On February 24, 2000, respondent, Danny M. Diener, sustained an injury in the course and scope of his employment with relator. His claim was allowed for "sprain lumbosacral; sprain thoracic region." On February 21, 2002, respondent filed an application for working and nonworking wage loss, seeking such compensation for the period beginning February 4, 2002. Respondent submitted physician reports indicating that medical restrictions prevent him from returning to his former position of employment. He also submitted evidence of job search activity he conducted during the period for which he seeks wage loss compensation, as well as evidence that he worked part-time during a portion of this period, and eventually obtained full-time employment.
 {¶ 4} On May 22, 2002, a staff hearing officer ("SHO") of the commission issued an order granting respondent's application for wage loss compensation. The SHO found that the evidence supports a finding that respondent cannot return to his former position, and that he engaged in a good faith job search. The SHO awarded wage loss for all periods except those within which respondent did not work and did not seek employment. The SHO further ordered ongoing wage loss compensation provided respondent submits continuing medical evidence. The commission refused relator's appeal from this order, whereupon relator filed this original action.
 {¶ 5} In support of its request for the extraordinary writ of mandamus, relator argues that the commission abused its discretion in granting respondent wage loss compensation without a specific finding of, and evidence in the record that demonstrates, a "good faith effort to search for suitable employment which is comparably paying work." Ohio Adm. Code4125-1-01(D)(1)(c). Relator also argues that the commission abused its discretion in ordering ongoing wage loss, "to continue with supporting medical proof."[1] Relator argues that wage loss should not have been awarded on an ongoing basis because respondent submitted no evidence of an ongoing "good faith effort to search for suitable employment which is comparably paying work." The fact underlying both of relator's arguments is that the jobs for which respondent applied, as well as the part-time and full-time work he secured, pay a substantially lower hourly rate than respondent earned in his former position. Relator argues that wage loss cannot be awarded absent evidence of a good faith search for work in which the rate of pay more closely approximates that which the claimant earned in his former position.
 {¶ 6} With respect to the award of ongoing wage loss, the magistrate found that this issue is not before the court. We disagree and thus sustain relator's objection to this conclusion. The subsequent employment of a respondent seeking wage loss will receive scrutiny to ensure that the respondent's job choice was occasioned by the injury-induced unavailability of other work.State ex rel. Jones v. Kaiser Found. Hosp. (1999),84 Ohio St.3d 405, 406. Such scrutiny includes the requirement that the respondent submit evidence that demonstrates not only that the search was conducted in good faith, but that it was adequate. Id. at 407. "Adequacy cannot be evaluated when a claimant fails to submit any evidence of his or her job contacts." Id.
 {¶ 7} In the present case, the commission ordered wage loss compensation to "continue" past the periods specified in the SHO's order "with supporting medical proof * * * and based on submission of continuing medical evidence of restrictions as required by the administrative rule."[2] However, wage loss compensation may be awarded only upon proof not only that the claimant is medically unable to return to the former position and that his injuries prevent him from obtaining new employment that eliminates any wage differential, but also that the claimant has engaged in a job search that meets the requirements of Ohio Adm. Code 4125-1-01(D)(1)(c). In this case, the fact that respondent has not yet submitted (or has not yet been given the opportunity to submit) evidence of an ongoing good faith search for suitable, comparably paying work does not mean that this issue is not before the court. The plain language of the SHO order awards ongoing wage loss compensation but requires only continuing medical evidence in support thereof. Because the ongoing award did not also require ongoing job search evidence, the award was an abuse of discretion.
 {¶ 8} With respect to the award of wage loss from February 4, 2002, the magistrate found the record contains some evidence to support the award. This finding was based upon the medical evidence noted by the SHO, as well as evidence that respondent made numerous in-person contacts with prospective employers during the relevant time period. Relator argues in its brief that there is no evidence to support a "good faith effort to search for suitable employment which is comparably paying work." Relator further argues that the SHO order is deficient because it makesonly a finding of good faith but makes no finding as to the suitability of the work sought, or whether the work sought was "comparably paying."
 {¶ 9} The magistrate found the stipulated evidence does support the wage loss award, in that respondent diligently searched for jobs within his skill level and within the physical limitations occasioned by his work-related injury. She further concluded that the SHO's finding of a "good faith job search" is, by definition, a finding that respondent engaged in a good faith search for "suitable employment which is comparably paying work," pursuant to Ohio Adm. Code 4125-1-01(D)(1)(c). Relator objects to both of these conclusions.
 {¶ 10} Whether a claimant has presented sufficient evidence that he made a good faith job search for suitable employment paying at a wage comparable to that which he earned with his former employer is a "critical question" that must be addressed by the commission in any order awarding wage loss compensation. See State ex rel. Honda Transmission Mfg. of America, Inc. v.Indus. Comm., 95 Ohio St.3d 95, 96, 2002-Ohio-1934. The job search required as a prerequisite to an award of wage loss compensation, "has an inherent qualitative component — it must be an adequate job search." State ex rel. Vanover v. EmeryWorldwide (1997), 80 Ohio St.3d 367, 369. (Citation omitted.) (Emphasis sic.)
 {¶ 11} Thus, a job search upon which an award of wage loss compensation may be based must not only be a good faith search for any employment, but for employment that is "suitable" and "comparably paying." See State ex rel. Jones, supra. See, also, Ohio Adm. Code 4125-1-01(D)(1)(c). The adequacy of a job search must be resolved on a case-by-case basis, and can encompass many factors, including the number and character of job contacts.State ex rel. Jones, supra, at 407; State ex rel. Vanover,
supra, at 369 "The commission's failure to examine [the] critical issues [of the adequacy of the job search] dictates a return to the commission for further consideration." State ex rel.Consolidated Freightways v. Engerer (1996), 74 Ohio St.3d 241,246.
 {¶ 12} In the present case, the commission abused its discretion when it ordered wage loss compensation while making no finding as to whether respondent demonstrated that his job search was adequate in that it included a search for "comparably paying work," as that term is defined at Ohio Adm. Code 4125-1-01(A)(7).
 {¶ 13} Accordingly, we sustain relator's objections to the magistrate's decision. We adopt the magistrate's findings of fact, we adopt in part and reject in part the magistrate's conclusions of law, and we hereby issue a writ of mandamus ordering the commission to vacate its order awarding wage loss compensation to respondent, to further consider the evidence, and to issue a new order respecting respondent's application for wage loss compensation for the disputed periods.
Objections sustained; writ of mandamus granted.
Bryant and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. AFG Industries, Inc. : dba AP Technoglass Company, : :
Relator, :
v. : No. 03AP-383 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Danny M. Diener, : Respondents. :
 MAGISTRATE'S DECISION IN MANDAMUS {¶ 14} Relator, AFG Industries, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted wage loss compensation to respondent Danny M. Diener ("claimant") and ordering the commission to find that claimant is not entitled to wage loss compensation.
 Findings of Fact {¶ 15} 1. Claimant sustained a work-related injury on February 24, 2000, and his claim has been allowed for: "sprain lumbosacral; sprain thoracic region."
 {¶ 16} 2. On February 21, 2002, claimant filed an application for both working and nonworking wage loss compensation seeking compensation from February 4, 2002 to present.
 {¶ 17} 3. Claimant submitted reports from Patricia Southworth, M.D., who opined that claimant had medical restrictions which prevented him from returning to his former position of employment.
 {¶ 18} 4. The record also contains the medical reports of Lewis Seeder, M.D., who opined that there were no objective clinical, imaging, or diagnostic findings precluding claimant from returning to his former work activity or other sustained work activities.
 {¶ 19} 5. Claimant also presented evidence of his job search which reveals the following: (1) from February 4, 2002 to February 10, 2002 — claimant was unemployed and made 15 in-person contacts with prospective employers; (2) from February 11, 2002 to February 17, 2002 — claimant was unemployed and made 15 in-person contacts with prospective employers; (3) from February 18, 2002 to February 24, 2002 — claimant was unemployed and made 15 in-person contacts with prospective employers; (4) from February 25, 2002 to March 3, 2002 — claimant obtained a job at MacKenzie Associates earning $7.50 per hour. He worked 25 hours during the pay period February 23, 2002 to March 1, 2002. Claimant made seven in-person contacts with prospective employers; (5) from March 4, 2002 to March 10, 2002 — claimant only worked two hours during the pay period from March 2, 2002 to March 8, 2002. Claimant made seven contacts with prospective employers, six in-person and one by telephone; (6) from March 10, 2002 to March 16, 2002 — claimant made one contact with Fulmer Supermarkets and obtained employment earning $6.65 per hour. Claimant worked 36 hours during the pay period from March 10, 2002 to March 16, 2002; (7) from March 17, 2002 to March 23, 2002 — claimant worked 32.75 hours during this pay period at Fulmer Supermarkets; (8) from March 24, 2002 to March 30, 2002 — claimant worked 24.5 hours; (9) from March 31, 2002 to April 7, 2002 — there is no evidence in the record that claimant was employed or engaged in a job search for this time period; (10) from April 8, 2002 to April 14, 2002 — claimant was unemployed and made 16 job contacts, 15 in-person and one by telephone, with prospective employers; (11) April 15, 2002 — claimant was hired at Nelson Auto Group on a full-time basis earning $7.75 per hour.
 {¶ 20} 6. Claimant's application for wage loss compensation was heard before a district hearing officer ("DHO") on April 19, 2002, and resulted in an order denying the requested compensation. The DHO relied upon the medical reports of Dr. Seeder and concluded that claimant was fully able to resume his former position of employment, or any other equivalent job, during the requested time period.
 {¶ 21} 7. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on May 22, 2002, and resulted in an order vacating the prior DHO order and granting claimant's request for wage loss compensation. The SHO specifically relied upon the February 1, 2002 report of Dr. Southworth as well as a recent functional capacity evaluation prepared May 2, 2002, and found that claimant had medical restrictions from the allowed conditions which prevented him from returning to his former position of employment. With regard to claimant's job search, the SHO noted that compensation would be payable with the exception of the time period when claimant was not employed and did not engage in a job search as follows:
Non-working and working wage loss compensation is granted for the period of 02/05/2002 through 05/01/2002, and to continue with supporting medical proof, less any actual wages earned over the above period, and based on submission of continuing medical evidence of restrictions as required by the administrative rule. It is found that the claimant has made a good faith job search beginning on 02/05/2002, worked two brief part-time jobs in late February and March of 2002, and recently started a full-time job on 04/15/2002. Wage loss is not payable for the period of 03/31/2002 through 04/07/2002, as the claimant was not employed during this period, and was not engaged in a job search.
 {¶ 22} 8. Relator appealed asserting that the SHO had ignored the report of David L. Condon, M.D., who had released claimant to return to work without restrictions and this constituted a mistake of fact requiring review by the full commission.
 {¶ 23} 9. By order mailed June 11, 2002, relator's appeal was refused.
 {¶ 24} 10. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 26} Wage loss compensation is payable pursuant to R.C.4123.56(B) which provides as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 27} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel. The Andersons v.Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court inState ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 28} In this mandamus action, relator contends that the commission abused its discretion by finding that claimant had engaged in a good-faith job search and had sought suitable employment which was comparably paying work. The purpose of wage loss compensation is to encourage workers to return to gainful employment. State ex rel. Consol. Freightways v. Engerer
(1996), 74 Ohio St.3d 241. It is well-settled that a prerequisite to an award of wage loss compensation is proof that the claimant made a good-faith effort to secure comparably paying work but was unable to do so due to the allowed condition. State ex rel.Chora v. Indus. Comm. (1996), 74 Ohio St.3d 238.
 {¶ 29} Ohio Adm. Code 4125-1-01(D) provides that the claimant is solely responsible for and bears the burden of producing evidence regarding their entitlement to wage loss compensation. Ohio Adm. Code 4125-1-01(D)(1)(c) states:
A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * *
 {¶ 30} The rule further provides:
* * * A good faith effort necessitates the claimant's con-sistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 31} Suitable employment is defined in Ohio Adm. Code4125-1-01(A)(7) as follows:
* * * [W]ork which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim[.] * * *
 {¶ 32} Comparably paying work is defined in Ohio Adm. Code4125-1-01(A)(8) as follows:
* * * [S]uitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 33} Thereafter, Ohio Adm. Code Chapter 4125-1 includes pages of relevant factors for determining whether a claimant has made a good-faith effort to secure suitable employment which is comparably paying work to eliminate the wage loss. For example, there are 15 factors which, if relevant, are to be considered in deciding whether a claimant has made a good-faith effort to search for employment, including the following: (1) the claimant's skills, prior employment history, and educational background; (2) the number, quality, and regularity of contacts made by the claimant with prospective employer's, public and private employment services; (3) the amount of time devoted to making prospective employer contacts during the requested period of compensation as compared with the amount of time spent working in the former employment (when nonworking wage loss is sought); (4) the amount of time devoted to making job contacts during the requested period of compensation as well as the number of hours spent working (when working wage loss is sought); (5) the claimant's physical capabilities; (6) the claimant's economic status as it impacts on their ability to search for employment; (7) any part-time employment engaged in by the claimant and whether that employment constitutes a voluntary limitation on the claimant's present earnings; and (8) whether the claimant restricts their search to employment that would require them to work fewer hours per week than they worked in the former position of employment.
 {¶ 34} There is a qualitative component to a claimant's job search which must be satisfied — one of adequacy and good faith.Consol. Freightways, supra. Adequacy is determined on a case-by-case basis and can encompass many factors, including the number and character of job contacts. State ex rel. Vanover v.Emery Worldwide (1997), 80 Ohio St.3d 367. In evaluating the legitimacy of a job contact, an important consideration should be whether the claimant knew or should have know that a position exceeded his qualification but applied anyway. State ex rel.Tumbleson v. Eaton Corp. (1999), 87 Ohio St.3d 140.
 {¶ 35} Relator contends that the commission abused its discretion by awarding wage loss compensation from February 23, 2002 through March 30, 2002; February 4, 2002 through February 22, 2002; and April 1, 2002 through April 14, 2002. The basis of relator's challenge centers, in part, on its assertion that claimant failed to contact employers in the manufacturing field where he had eight years of experience and chose to seek unskilled jobs instead.
 {¶ 36} The commission relied upon medical evidence that claimant was prevented from returning to his former position of employment where he was employed as a machine operator. The record indicates that claimant was injured while "he was on all fours with his arms forward twisting a wheel when he felt a pop in the left lower back area." Furthermore, there is evidence in the record that claimant's former job involved lifting 70 pounds on an occasional basis and 35 pounds repetitively and carrying 70 pounds. Based upon the report of Dr. Southworth upon whom the commission relied, claimant was restricted to continuously lifting or carrying up to ten pounds; occasionally lifting and carrying up to 20 pounds; and precluded from lifting or carrying above 25 pounds. Furthermore, claimant could occasionally bend and squat, continuously reach, but was precluded from crawling and climbing.
 {¶ 37} Although relator contends that claimant had certain skills, relator does not identify those skills. Relator is a company which makes glass products for automotive manufacturers and the record does not include any specific recitation of claimant's job duties or skills. As such, there is no evidence in the record to support relator's contention that claimant had specific skills and that he was specifically refusing to look for work which would utilize those skills. Furthermore, the record shows that claimant did find and take part-time work and, at the same time, continued to look for other work. Claimant found a job at Fulmer Supermarkets which, although it paid less, provided him with the opportunity for full-time employment. Thereafter, claimant became employed by Nelson Auto Group on a full-time basis. Relator also asserts that the commission's order is legally deficient. Relator contends that, although the commission found and stated that claimant "made a good faith job search," the commission failed to find that claimant's "good faith job search" was for "suitable employment" which was "comparably paying work." This magistrate disagrees.
 {¶ 38} A "good faith job search" can be found, by definition, only where the claimant has sought "suitable employment" for "comparably paying work." The goal is to eliminate the wage loss. In the present case, claimant sought other employment and secured a job. Thereafter, claimant continued to search for a higher paying job and secured one. While claimant does have an ongoing obligation to continue to eliminate the wage loss thereafter, that issue is not currently before the court. This magistrate finds that relator's argument that the commission's order was deficient does not have merit.
 {¶ 39} Because there is some evidence in the record upon which the commission based its decision and because there is no evidence in the record to support relator's assertion that claimant's job search was inadequate, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.
[1] May 22, 2002 SHO order, ¶ 2.
[2] May 22, 2002 SHO order, ¶ 2.