{¶ 21} I respectfully dissent. Rolando Montez is not seeking benefits other than working wage loss from a date when he had returned to work, from August 8, 2006 onward.
 {¶ 22} In granting working wage loss, a staff hearing officer ("SHO") stated:
 * * * After the lay-off injured worker collected unemployment benefits and looked for work. During this time frame, the injured worker registered with S.C.O.T.I. for the Ohio Bureau of Job and Family Services. Injured worker testified that from April to August he did a job search wherein he went to several hospitals, and other venues, to see what kind of employment he could find. He ultimately found a job with Metokote, and began working on August 8. He found work as a fork lift operator, making $8.00 an hour and subsequently received a raise to $8.75 an hour. Injured worker's work with Metokote was full-time employment of 40 hours per week.
 * * *
 The Hearing Officer finds that injured worker found a job with Metokote within his restrictions, where he had a reasonable expectation of advancement, that would provide benefits to him. Injured worker was ultimately let go from Metokote because his computer skills weren't good enough and he is now working at Knight's Facility which provides janitorial services to General Motors. He is currently making $9.50 an hour and he testified that he has expectations of benefits or a raise in the fut[u]re.
 The Hearing Officer finds that in August of 2006, the injured worker obtained a full-time job within his restrictions working 40 hours per week. The Hearing Officer also finds that part of injured worker's restrictions was not working more than 40 hours per week. Therefore, the Hearing Officer finds employer's argument that injured worker was required to make a supplementary job search unpersuasive. Injured worker would be forced to work outside his restrictions if he did a supplementary job search. Additionally, the employer's argument that injured worker's prior job search is somehow relevant to the period requested is similarly found un-persuasive. *Page 9 
Injured worker made no request for the earlier period, specifically because he acknowledged there was insufficient proof of a good faith search during that time. The Hearing Officer does not find the injured worker's actions prior to the requested period to be relevant in this determination. The Hearing Officer does not find that injured worker had a need to do a supplementary job search as it would have put him outside of his work restrictions to do so. Finally, the Hearing Officer finds injured worker's argument persuasive that the job prospects in the local economy are not such that he would be able to obtain comparably paying work within his restrictions. The employer offered no evidence as to why an employer the size of Johnson Controls would have been unable to provide injured worker with comparably paying work within his restrictions as they are a very large employer.
 It is the [sic] further the finding of this Staff Hearing Officer that claimant has otherwise complied with the requirements of Industrial Commission Rule 4125-1-01 (C)(D).
 {¶ 23} I see no basis for sending this case back for more review. The SHO knows the applicable requirements for working wage loss and heard testimony about the extent of the job search. The SHO found that Mr. Montez had suffered a loss in income when he took the job with Metokote, followed by employment at Knight's Facility.
 {¶ 24} This is not a situation where a self-employed worker artificially reduces income and then seeks working wage loss. This is a situation where a man drew unemployment after his former employer decided it had no more work within his job restrictions. He registered with the Ohio Department of Job and Family Services and searched for employment for four months before landing a job. When his computer skills were deemed insufficient, he searched for and found a second job within his restrictions.
 {¶ 25} I am not sure what the next SHO is supposed to do. Is the SHO to speculate about other job opportunities two years ago and the likelihood of Mr. Montez being hired despite his medical limitations? Mr. Montez has consistently worked or *Page 10 
sought work consistent with his limitations. He clearly is entitled to working wage loss. The SHO who granted the working wage loss clearly found Montez deserved working wage loss. The SHO obviously knew the applicable requirements and found them to have been met including an adequate job search. There is simply no basis in this record for overturning the SHO's ruling. I respectfully dissent from the majority's granting of a writ; even a limited writ. *Page 11 
 MAGISTRATE'S DECISION {¶ 26} Relator, Johnson Controls, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted wage loss compensation to respondent *Page 12 
Rolando Montez ("claimant"), and ordering the commission to deny claimant's application for wage loss compensation. Findings ofFact:
 {¶ 27} 1. Claimant sustained a work-related injury on October 27, 2003, and his claim has been allowed for "right shoulder strain; right shoulder rotator cuff tear; right shoulder slap tear; right shoulder impingement syndrome; adjustment disorder with depressed mood."
 {¶ 28} 2. Following surgeries, claimant was able to return to light-duty employment with relator until April 10, 2006. At that time, claimant was laid off by relator because relator no longer had work within claimant's restrictions available.
 {¶ 29} 3. In September 2006, claimant filed a motion requesting working wage loss compensation from August 1, 2006 forward. In support of the motion, claimant filed a C-140 application for wage loss compensation which indicated his prior work history, the January 31, 2006 report from Joseph Assenmacher, M.D., indicating that he believed claimant was an excellent candidate for job retraining and that, on January 26, 2006, he placed claimant on light-duty restrictions, with a stop date of February 21, 2006; a copy of the Ohio Department of Job and Family Services ("ODJFS") Registration form, Starting Career Opportunities Training Information ("SCOTI"); and pay stubs from August 17 through December 14, 2006. The SCOTI registration form notes, under general information, claimant's "Employment Status: Employed."
 {¶ 30} 4. Claimant's application was heard before a district hearing officer ("DHO") on December 6, 2006. The DHO granted claimant's request for wage loss compensation beginning August 7, 2006. The DHO noted: claimant has permanent work restrictions, *Page 13 
that his current job pays him $8.75 per hour, claimant found this position of employment through his ODJFS required job searches while receiving unemployment benefits from April until August 2006, claimant testified he believes he will be hired on a permanent basis by his current employer and claimant expects to receive a raise and benefits at that time.
 {¶ 31} 5. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on January 18, 2007. The SHO vacated the prior DHO's order yet granted claimant wage loss benefits beginning August 7, 2006. Relator had argued that claimant had not met his burden of demonstrating that he had made a good-faith effort to seek suitable employment which was comparably paying work. In this regard, the SHO stated:
 * * * After the lay-off injured worker collected unemployment benefits and looked for work. During this time frame, the injured worker registered with S.C.O.T.I. for the Ohio Bureau of Job and Family Services. Injured worker testified that from April to August he did a job search wherein he went to several hospitals, and other venues, to see what kind of employment he could find. He ultimately found a job with Metokote, and began working on August 8. He found work as a fork lift operator, making $8.00 an hour and subsequently received a raise to $8.75 an hour. Injured worker's work with Metokote was full-time employment of 40 hours per week.
 * * *
 The Hearing Officer finds that injured worker found a job with Metokote within his restrictions, where he had a reasonable expectation of advancement, that would provide benefits to him. Injured worker was ultimately let go from Metokote because his computer skills weren't good enough and he is now working at Knight's Facility which provides janitorial services to General Motors. He is currently making $9.50 an hour and he testified that he has expectations of benefits or a raise in the fut[u]re. *Page 14 
 The Hearing Officer finds that in August of 2006, the injured worker obtained a full-time job within his restrictions working 40 hours per week. The Hearing Officer also finds that part of injured worker's restrictions was no working more than 40 hours per week. Therefore, the Hearing Officer finds employer's argument that injured worker was required to make a supplementary job search unpersuasive. Injured worker would be forced to work outside his restrictions if he did a supplementary job search. Additionally, the employer's argument that injured worker's prior job search is somehow relevant to the period requested is similarly found unpersuasive. Injured worker made no request for the earlier period, specifically because he acknowledged there was insufficient proof of a good faith search during that time. The Hearing Officer does not find the injured worker's actions prior to the requested period to be relevant in this determination. The Hearing Officer does not find that injured worker had a need to do a supplementary job search as it would have put him outside of his work restrictions to do so. Finally, the Hearing Officer finds injured worker's argument persuasive that the job prospects in the local economy are not such that he would be able to obtain comparably paying work within his restrictions. The employer offered no evidence as to why an employer the size of Johnson Controls would have been unable to provide injured worker with comparably paying work within his restrictions as they are a very large employer.
 It is the [sic] further the finding of this Staff Hearing Officer that claimant has otherwise complied with the requirements of Industrial Commission Rule 4125-1-01 (C)(D).
 {¶ 32} 6. Relator's appeal was refused by order of the commission mailed February 28, 2007.
 {¶ 33} 7. Relator's request for reconsideration was denied by order of the commission mailed April 19, 2007.
 {¶ 34} 8. Thereafter, relator filed the instant mandamus action in this court. *Page 15 
Conclusions of Law: {¶ 35} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 36} For the reasons that follow, it is this magistrate's conclusion that this court should issue a writ of mandamus in this case.
 {¶ 37} Relator argues that the commission abused its discretion by failing to address the issue of whether or not claimant sustained his burden of demonstrating that he made a good-faith effort to seek suitable employment which was comparably paying work before he accepted employment with Metokote beginning August 7, 2006. The commission determined that claimant's job search, or lack thereof, between April and August 2006, was irrelevant because claimant was not seeking wage loss compensation for that time period. *Page 16 
 {¶ 38} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel.The Andersons v. Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court in State ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 39} In considering a claimant's eligibility for wage loss compensation, the commission is required to give consideration to, and base the determination on, evidence relating to certain factors including claimant's search for suitable employment. The Supreme Court of Ohio has held that a claimant is required to demonstrate a good-faith effort to search for suitable employment which is comparably paying work before claimant is entitled to both nonworking and working wage loss compensation. State ex rel. Pepsi-Cola Bottling Co. v. Morse (1995),72 Ohio St.3d 210; State ex rel. Reamer v. Indus. Comm. (1997),77 Ohio St.3d 450; and State ex rel. Rizer v. Indus. Comm. (2000),88 Ohio St.3d 1. A good-faith effort necessitates claimant's consistent, sincere, and best attempt to obtain suitable employment that will eliminate the wage loss.
 {¶ 40} Ohio Adm. Code 4125-1-01(A) defines "Suitable employment" and "Comparably paying work" as follows:
 (7) "Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, *Page 17 
and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 (8) "Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 41} Ohio Adm. Code 4125-1-01(C) identifies for claimants the relevant information which must be contained with an application for wage loss compensation. Specifically, Ohio Adm. Code 4125-1-01(C)(5) provides:
 (5) All claimants seeking or receiving working or nonworking wage loss payments shall supplement their wage loss application with wage loss statements, describing the search for suitable employment, as provided herein. The claimant's failure to submit wage loss statements in accordance with this rule shall not result in the dismissal of the wage loss application, but shall result in the suspension of wage loss payments until the wage loss statements are submitted in accordance with this rule.
 (a) A claimant seeking or receiving wage loss compensation shall complete a wage loss statement(s) for every week during which wage loss compensation is sought.
 (b) A claimant seeking wage loss compensation shall submit the completed wage loss statements with the wage loss application and/or any subsequent request for wage loss compensation in the same claim.
 (c) A claimant who receives wage loss compensation for periods after the filing of the wage loss application and/or any subsequent request for wage loss compensation in the same claim shall submit the wage loss statements completed pursuant to paragraphs (C)(5)(a), (C)(5)(d) and (C)(5)(e) of this rule every four weeks to the bureau of worker's [sic]
compensation or the self-insured employer during the period when wage loss compensation is received. *Page 18 
 (d) Wage loss statements shall include the address of each employer contacted, the employer's telephone number, the position sought, a reasonable identification by name or position of the person contacted, the method of contact, and the result of the contact.
 (e) Wage loss statements shall be submitted on forms provided by the bureau of workers' compensation.
 {¶ 42} Thereafter, Ohio Adm. Code 4125-1-01(D)(1)(c) provides certain relevant factors which must be considered by the commission and upon which the commission's determination must be made in evaluating whether claimant has made a good-faith effort. Those factors include: claimant's skills, prior employment history, and educational background; the number, quality, and regularity of contacts made with prospective employers; for a claimant seeking any amount of working wage loss compensation, the amount of time devoted to making perspective employer contacts during the period for which working wage loss is sought, as well as the number of hours spent working, any refusal by claimant to accept assistance from the Ohio Bureau of Workers' Compensation in finding employment; any refusal by claimant to accept the assistance of any public or private employment agency; labor market conditions; claimant's physical capabilities; any recent activity on the part of claimant to change her place of residence and the impact such change would have on the reasonable probability of success and the search for employment; claimant's economic status; claimant's documentation of efforts to produce self-employment income; any part-time employment engaged in by claimant and whether that employment constitutes a voluntary limitation on claimant's present earnings; whether claimant restricts her search to employment that would require her to work fewer hours per week than she worked in the former position of employment; and whether, as a result of physical restrictions, claimant is enrolled in a rehabilitation program. *Page 19 
 {¶ 43} In the present case, the commission found that because claimant had secured employment which, according to claimant's testimony, might ultimately eliminate the wage loss, claimant was entitled to wage loss compensation without his having to meet the requirement of providing evidence of his job search. Specifically, claimant testified before the SHO that he was currently earning $9.50 per hour and had no benefits. Claimant thought that in one to two years, he would get benefits and a raise.
 {¶ 44} On several occasions, the Supreme Court of Ohio has denied wage loss compensation to claimants who, without first conducting a job search, became self-employed after it was medically determined that the claimant was unable to return to the former position of employment. InState ex rel. Ooten v. Siegel Interior Specialists Co. (1998),84 Ohio St.3d 255, the court stated that the causal relationship between the allowed conditions and the wage loss is often satisfied by evidence of an unsuccessful search for employment at the pre-injury rate of compensation. Although the Ooten case involved a claimant who became self-employed, the court has also applied the same reasoning where a claimant accepts other employment and is not self-employed. In State exrel. Jones v. Kaiser Found. Hosp. Cleveland (1999), 84 Ohio St.3d 405, the claimant's allowed condition left her unable to return to her former position of employment. She obtained other employment earning less than she had with her former employer. The commission denied her motion finding that she had failed to meet her burden of proof. Citing its decisions in Pepsi-Cola and Ooten, the court reiterated that a claimant seeking wage loss for the earnings differential between the former position of employment and subsequent employment may find the latter subject to scrutiny, particularly where the subsequent job is a self-employed or part-time physician. The court reasoned that the *Page 20 
additional scrutiny ensures that the requisite causal relationship exists between the allowed conditions and that claimant's inability to secure suitable employment which is comparably paying work.
 {¶ 45} As in our case, the claimant in Jones argued that, although she failed to present evidence of a job search, an adequate job search should be inferred from her successful acquisition of subsequent employment. The court disagreed and stated:
 The mere fact of a job search does not entitle a claimant to wage-loss compensation. There is a qualitative component to that job search that must be satisfied — one of adequacy and good faith. State ex rel. Consol. Freightways v. Engerer (1996), 74 Ohio St.3d 241 * * * Adequacy is determined on a case-by-case basis and can encompass many factors, including the number and character of job contacts. State ex rel. Vanover v. Emery Worldwide (1997), 80 Ohio St.3d 367 * * *. Adequacy cannot be evaluated when a claimant fails to submit any evidence of his or her job contacts. * * *
Id. at 407. See, also, State ex rel. Martishius v. Indus. Comm. (2007), Franklin App. No. 06AP-581; State ex rel. Whatley v. Indus. Comm.
(2007), Franklin App. No. 06AP-939; State ex rel. Morrow v. Indus.Comm. (2007), Franklin App. No. 06AP-1098.
 {¶ 46} In the present case, the commission failed to address the adequacy of claimant's job search and, instead, found that a job search, or lack thereof, was irrelevant because claimant had found employment. Based upon the above case law, the commission was required to address the issue before granting or denying claimant wage loss compensation. As such, the magistrate finds that the commission did abuse its discretion in this case by granting claimant wage loss compensation by finding that a job search was irrelevant given that claimant had secured some employment.
 {¶ 47} Based on the foregoing, it is this magistrate's conclusion that this court should issue a writ of mandamus ordering the commission to vacate its order which *Page 21 
granted wage loss compensation to claimant and to reconsider the matter after considering and addressing the adequacy of claimant's job search. *Page 1