DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Borden, Inc. (hereinafter "relator"), filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio (hereinafter "IC"), to vacate its orders dated August 22, 2001, June 19, 2002, and September 6, 2002, which granted wage loss compensation to respondent, Sandra L. Martin (hereinafter "claimant"), based upon the greater of the average weekly wage or full weekly wage and the wages she actually earned at J.C. Penney over the period October 17, 1998 through May 1, 2000, and ordering the IC to issue an order denying her compensation for this time period. In the alternative, relator requests this court issue a limited writ, referring the matter back to the IC for a new hearing on the issue.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ. R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached hereto as Appendix A.) The magistrate concluded the IC abused its discretion by determining claimant's wage loss compensation based upon Ohio Adm. Code4125-1-01(H)(3) and the IC's August 22, 2001, order should be vacated. Further, this magistrate found, even though the deputy used Ohio Adm. Code 4125-1-01(F) in calculating the award of wage loss compensation to claimant in the July 12, 2000, order, the alternative method of calculation did not constitute an abuse of discretion where, as here, the IC specifically found claimant voluntarily limited the number of hours she was working. As such, the magistrate recommended a writ of mandamus should issue, ordering the IC to vacate its October 22, 2001, order and the IC reinstate its July 12, 2000, order.
 {¶ 3} Relator, claimant, and the IC filed objections to the magistrate's decision. Relator argues the magistrate improperly allowed the application of Ohio Adm. Code 4125-1-01(F)(3)(b), finding said code section reflects the case law in effect prior to the May 15, 1997, effective date of Ohio Adm. Code Chapter 4125. Moreover, relator contends the magistrate erred in concluding the IC always had discretion to vary the calculation of a claimant's wage loss in the face of evidence a claimant voluntarily limited the number of hours worked at the job returned to, other than the former position of employment in which the injury occurred, notwithstanding the fact the claimant failed to make a good faith job search for full-time comparatively paying employment.
 {¶ 4} Claimant maintains relator failed to exhaust a plain and adequate remedy in the ordinary course of the law. Thus, claimant contends relator is precluded relief by the extraordinary writ of mandamus. Moreover, claimant argues the magistrate relied on a factual misstatement regarding the IC's previous ruling on her alleged voluntary limitation of her hours of work for reasons unrelated to her injury. Finally, claimant asserts the magistrate improperly applied current administrative rules retroactively resulting in an unconstitutional change in her substantive rights.
 {¶ 5} The IC's sole objection relates to the magistrate's finding the IC had the discretion to use an alternative method to determine claimant's annual working wage (hereinafter "AWW"). The IC maintains the magistrate inadvertently used the phrase AWW when she meant to write "wage loss compensation rate."
 {¶ 6} In determining whether an injured employee is entitled to wage loss compensation, the IC must be cognizant of the potential for abuse and, as a result, carefully scrutinize, inter alia, post-injury part-time employment. State ex rel. Brinkmanv. Indus. Comm. of Ohio (1999), 87 Ohio St.3d 171, 173. The concern is to "ensure that wage-loss compensation is not subsidizing * * * life-style choices." Id. (Citations omitted.)
 {¶ 7} In Brinkman, the Supreme Court of Ohio examined the issue of whether an injured employee voluntarily limited his employment because he acquired part-time work and did not continue a full-time job search. In analyzing this issue, theBrinkman court found Stahl v. Southeastern X-Ray (Fla.App. 1984), 447 So.2d 399, edifying. In Stahl, the court balanced the concerns associated with part-time work and economic reality, concluding the determination of:
[W]hether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors [physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and availability of jobs] and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule.
Id. at 401, quoted in Brinkman, at 173-174.
 {¶ 8} In addition to embracing this reasoning, the Brinkman
court focused on the fact wage-loss compensation, if awarded, is not permanent. Instead, pursuant to R.C. 4123.56(B), it ends after 200 weeks. Accordingly, the Brinkman court determined a broader-based analysis should be employed when examining post-injury part-time work, reasoning:
[W]hen a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired.
This does not mean that the claimant is entitled to turn down a job as paying too little and still claim wage-loss compensation. Neither, however, should it compel the departure from a lucrative job with full-time potential for menial work simply because the latter is immediately available full-time.
Id. at 174.
 {¶ 9} Throughout this tortuous litigation, a constant has been the IC's finding claimant voluntarily limited her employment. First, in the May 1, 2000 order, the district hearing officer (hereinafter "DHO") concluded:
The wage loss rule clearly provides that one must continue to look for comparably paying work even if there has been a return to work. The wage statements clearly reflect that the claimant is not employed on a full-time basis at J.C. Penney. The claimant testified that her hours fluctuate and that she is considered a `permanent part-time' employee. The wage statements document that the claimant does not work the typical 40 hour week that is considered full-time. She testified that she has not looked for any work since becoming employed at J.C. Penney. * * * The [DHO] further orders that working wage loss be denied * * * as the claimant has not looked for comparably paying work since she works less than full-time.
 {¶ 10} The May 3, 2000, order from the staff hearing officer affirmed this finding by the DHO.
 {¶ 11} Similarly, in the July 12, 2000 order, the deputy concluded claimant voluntarily limited her employment and rejected her argument Brinkman applied. Specifically, the deputy found:
A review of the evidence indicates that over the period of 10/17/98 through 05/01/00, the claimant's hours fluctuated greatly from week to week. The record shows that the claimant in the second week with J.C. Penny [sic] worked a full 40 hours. The claimant stated at hearing on 05/01/00, that some weeks she worked only four to six hours.
The claimant also testified at hearing on 05/01/00 that she was hired as a permanent part-time employee by J.C. Penny [sic], and that once hired, she never applied or attempted to find other full-time work. Based on the claimant's testimony at hearing on 05/01/00, and her failure to attempt to find full-time work consistent with the number of hours worked at her previous job, the claimant is found to have voluntarily limited her employment for the period from 10/17/98 through 05/01/00.
* * *
The claimant argued * * * that [Brinkman] applies, but the facts of the present case are not consistent with Brinkman.
* * *
 {¶ 12} Upon review, we conclude the IC did not fully consider the issue of whether claimant voluntarily limited her income. The failure to apply the broad approach advanced by the Brinkman
court for determining whether an injured employee voluntarily limited his or her income was erroneous. The analysis inBrinkman is not to be limited to factually similar circumstances. Instead, the analysis discussed in Brinkman
should be applied to all situations in which an injured employee obtains post-injury part-time employment to determine whether, under the totality of that individual employee's circumstances, the limitation of income was voluntary.
 {¶ 13} In this matter, the IC employed a narrow analysis to claimant's employment situation. The prevailing factors in the IC's factual finding that claimant voluntarily limited her income were: (1) she accepted part-time employment, and (2) after doing so, she stopped searching for full-time employment. The IC failed to consider claimant's assertions she worked as much as was available and was ready, willing, and able to work full-time, averaging 33 hours a week. The IC also did not account for the claimant's contention she was making more with J.C. Penney per hour than she was with her former employer, Borden. Finally, the IC failed to consider the allegation J.C. Penney indicated full-time employment may become available to claimant.
 {¶ 14} We conclude for the IC to properly determine whether claimant voluntarily limited her income, it must consider the factors enumerated in Brinkman and any other relevant factors which pertain to why claimant accepted part-time employment with J.C. Penney and discontinued her job search for full-time employment. Without consideration of claimant's individual circumstances, a finding claimant voluntarily limited her income, potentially, equates to the IC "asking [her] to `leave a good thing.'" Brinkman, supra.
 {¶ 15} Moreover, as this is a potentially determinative issue, we decline to examine whether the magistrate improperly allowed the application of Ohio Adm. Code 4125-1-01(F)(3)(b) at this time.
 {¶ 16} Following an independent review pursuant to Civ.R. 53, objections to the magistrate decision are sustained to the extent consistent with this opinion. This court adopts the magistrate's finding of facts as supplemented by this opinion but rejects the magistrate's conclusions of law. We find that a limited writ of mandamus must issue. Respondent, Industrial Commission of Ohio, is ordered to vacate the July 12, 2000 order of its deputy, to conduct a new hearing for the limited purpose of considering whether claimant voluntarily limited her work hours for reasons unrelated to her injury, and to enter a new order consistent with this opinion. The Commission shall vacate or modify any other order which is inconsistent with this new order.
Objections sustained;
 limited writ of mandamus granted.
 BRYANT and BROWN, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Borden, Inc., : Relator, : v. : No. 03AP-257 Sandra L. Martin and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents.:
 MAGISTRATE'S DECISION Rendered on September 16, 2003 Earl, Warburton, Adams Davis, and Bruce L. Hirsch, for relator.
Larrimer Larrimer, and David H. Swanson, for respondent Sandra L. Martin.
Jim Petro, Attorney General, and Thomas L. Reitz, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 17} Relator, Borden, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders dated August 22, 2001, June 19, 2002 and September 6, 2002, which granted wage loss compensation to respondent Sandra L. Martin ("claimant") based upon the greater of the average weekly wage or full weekly wage and the wages she actually earned at J.C. Penney over the period October 17, 1998 through May 1, 2000, and ordering the commission to issue an order denying her compensation for this time period. In the alternative, relator requests that this court issue a limited writ referring the matter back to the commission for a new hearing on the issue.
Findings of Fact:
 {¶ 18} 1. Claimant sustained a work-related injury on March 7, 1995, and her claim has been allowed as follows: "Torn right rotator cuff/bicep tendon."
 {¶ 19} 2. It is undisputed that claimant is unable to return to her former position of employment as a result of the allowed conditions in the claim.
 {¶ 20} 3. Claimant sought and secured part-time/permanent employment with J.C. Penney in a job which accommodated her physical restrictions but offered her a lower rate of pay.
 {¶ 21} 4. On March 3, 2000, claimant filed a motion seeking the payment of non-working wage loss compensation from September 20, 1998 through October 17, 1998, as well as working wage loss compensation from October 17, 1998 through May 1, 2000.
 {¶ 22} 5. Claimant's motion was heard before a district hearing officer ("DHO") on May 1, 2000, and resulted in an order which denied claimant's request for non-working wage loss compensation due to lack of a good-faith job search. The DHO also denied claimant's request for working wage loss compensation on the basis that the wage loss rule requires that one must continue to look for comparably paying work even if there has been a return to work if the claimant was not employed full time. The DHO noted that claimant testified that she had not looked for work since she became employed at J.C. Penney.
 {¶ 23} 6. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on May 30, 2000. The SHO denied compensation in its entirety. In denying claimant working wage loss compensation, the SHO reiterated that claimant had failed to look for comparably paying work during the time that she was employed less than full time.
 {¶ 24} 7. Claimant's further appeal was heard before a deputy on July 12, 2000. The deputy determined that claimant had voluntarily limited her employment during the period of October 17, 1998 through May 1, 2000, by working on a part-time basis at J.C. Penney. The deputy then applied Ohio Adm. Code4125-1-01(F)(3)(b) and found that claimant was entitled to wage loss compensation based only on the hours claimant actually worked. As such, relator was ordered to pay claimant 66 and two-thirds of the difference between claimant's hourly rate at the time of her injury and the hourly rate she received from J.C. Penney.
 {¶ 25} 8. On January 24, 2001, claimant filed a motion with the commission contesting the method relator was using to calculate her wage loss award. Specifically, claimant asserted that she was entitled to have her wage loss award calculated based upon her full weekly wage ("FWW").
 {¶ 26} 9. Claimant's motion was heard before a DHO on April 10, 2001, and was denied. The DHO found that relator had properly calculated the wage loss compensation pursuant to the July 12, 2000 order of the deputy and the application of Ohio Adm. Code4125-1-01(F)(3) which provides an alternative wage loss calculation where the adjudicator finds that claimant has voluntarily limited her income.
 {¶ 27} 10. Claimant's appeal was heard before an SHO on May 11, 2001. The SHO affirmed the prior DHO order finding that relator had properly calculated claimant's wage loss compensation.
 {¶ 28} 11. Further appeal was refused by order of the commission mailed June 13, 2001.
 {¶ 29} 12. Thereafter, by order mailed July 21, 2001, the commission sua sponte vacated the prior orders issued June 13, 2001, May 31, 2001 and April 14, 2001, and referred claimant's June 13, 2001 appeal for a new hearing. The commission made the following findings:
Specifically, there is evidence that a mistake of law may have occurred when the Deputy failed to apply Ohio Admin. Code4125-1-01(H)(3) when he awarded wage loss from 10/17/1998 through 05/01/2000. Ohio Admin. Code 4125-1-01(H)(3) provides:
Notwithstanding paragraph (H)(3) of this rule, if a claimant files an application for wage loss compensation in a claim in which the injury occurred or the date of disability arose before the effective date of this rule, the wage loss compensation paid shall be calculated based on the greater of the full weekly wage or the average weekly wage.
 {¶ 30} 13. The matter was heard before a second deputy on August 22, 2001. The second deputy modified the prior July 12, 2000 deputy order upon a finding that the prior deputy had failed to apply Ohio Adm. Code 4125-1-01(H)(3) when he awarded wage loss compensation. In ultimately ordering that claimant's wage loss compensation be calculated on the greater of the fuller average weekly wage, the deputy stated as follows:
The Deputy notes that O.R.C. 4123.56(B) authorizing the payment of wage loss compensation was promulgated effective 08/22/1986. Former Ohio Adm. Code 4121:3-32 provided little guidance in the adjudication of these issues. Therefore, it was repealed and Ohio Adm. Code 4125-1-01 was promulgated in its place, effective 05/15/1997. Therefore, there exists in excess of ten (10) years in which an injured worker could potentially be entitled to wage loss compensation, but that for whom the substantive portions of the current rule would not apply. The Deputy finds that the provisions of Ohio Adm. Code 4125-1-01 are all procedural in nature except for subsections (B), (F) and (H), as these sections regulate the rate of payments that can be made. Subsection (A) is definitions, while subsection (B) mimics the grant of authority to pay an award pursuant to O.R.C. 4123.56(B). Subsections (C) and (D) reference actions that must be completed in order for an injured worker to be entitled to wage loss compensation. Subsection (E) is a set of instructions regarding the contents of the order to Hearing Officers. Subsection (F) is entitled computation of wage loss. Subsection (G) is a set of instructions for self-insured employers. Finally, subsection (H) regulates prospective application.
The date of injury in this claim is 03/07/1995, thereby predating the enactment of Ohio Adm. Code 4125-1-01. It is well settled that the law in effect on the date of injury controls an injured worker's entitlement to benefits and/or rights. SeeIndus. Comm. v. Kamrath (1928), 118 Ohio St. 1; State,ex rel. Kirk v. Owens-Illinois, Inc. (1986),25 Ohio St.3d 360; State, ex rel. Frank v. Keller, Admr.
(1965), 3 Ohio App.2d 428. It is equally well settled under O.R.C. 1.48 that changes in the law must be prospective unless expressly made retroactive, and then only if the provision is procedural (i.e. not substantive) in nature. If it is determined that the law is substantive (i.e. affecting duties, rights or obligations), then it will not pass constitutional scrutiny. SeeState, ex rel. Holdridge v. Indus. Comm. (1967),11 Ohio St.2d 175 and Gregory v. Flowers (1972),32 Ohio St.2d 48.
The injured worker is found to be eligible for wage loss compensation by virtue of her date of injury as well as by the factual and medical findings made by the Deputy in his order dated 07/12/2000. Subsection (H)(1) indicates that the rule shall apply to all periods of compensation on or after the effective date, unless otherwise provided in paragraph (H)(3). Subsection (F) begins by restricting its application by stating that diminishment of wages shall be calculated based on the following unless otherwise provided in paragraph (H)(3). Paragraph (H)(3) states that notwithstanding paragraph (H)(1), if the injured worker's date of injury predates the effective date of this rule, wage loss compensation shall be calculated based on the greater of the full or average weekly wage. Therefore, although the period ordered paid is after the effective date of the rule, it must be calculated based on the greater of the full or average weekly wage as the injured worker's date of injury predated the effective date of the rule. This finding is made due to the fact that the computation of the benefit is found to be a substantive right that may not be retroactively affected by the passage of the rule. Therefore, the Deputy orders that the injured worker's wage loss compensation, as ordered by the Deputy order dated 07/12/2000, be paid from 10/17/1998 through 05/01/2000 at sixty-six and two thirds per cent of the injured worker's weekly (not hourly) wage loss, based on her full weekly wage, not to exceed the statewide average weekly wage for the period previously indicated. While this Deputy acknowledges that this decision virtually renders the voluntarily limited number of hours finding void, he nonetheless finds that the legal authority proscribes no other legally permissible solution. Further-more, O.R.C. 4123.95 requires that any ambiguity in the interpretation of the law be construed in the favor of the injured worker. Therefore, as previously stated, the substantive nature of the computation of payment prohibits any alterative method from being implemented which was not in effect on the date of the injured worker's date of injury.
 {¶ 31} 14. On May 6, 2002, relator filed a motion asking the commission to accept continuing jurisdiction based upon a clear mistake of law pursuant to R.C. 4123.52. Relator argued that the second deputy failed to recognize the legal consequence of the prior finding of fact that claimant had voluntarily limited her hours of employment and that this had severed the causal relationship between any purported wage loss and work injury. Relator argued that claimant was not entitled to any wage loss compensation.
 {¶ 32} 15. The commission referred the matter to a DHO for a hearing which was held on June 19, 2002. The DHO concluded that relator had not demonstrated a clear mistake of law sufficient to justify the commission exercising its continuing jurisdiction pursuant to R.C. 4123.52.
 {¶ 33} 16. Upon further appeal, the matter was heard before an SHO on September 6, 2002, and the prior DHO order refusing to exercise continuing jurisdiction was affirmed.
 {¶ 34} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 35} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 36} Ohio Adm. Code Section 4125 became effective in May 1997. Prior to that time, determinations involving wage loss compensation were governed by R.C. 4123.56(B) and guided by Ohio Adm. Code 4121-3-32(D) and the developing case law. Former R.C.4123.56(B) provided as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than his former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, he shall receive compen-sation at sixty-six and two-thirds per cent of his weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 37} Supplementing the statute, Ohio Adm. Code 4121-3-32
provided, in pertinent part, as follows:
(D) In injury claims in which the date of injury * * * is on or after August 22, 1986, the payment of compensation or wage loss pursuant to division (B) of section 4123.56 of the Revised Code shall commence upon application with a finding of any of the following:
(1) The employee, as a direct result of the allowed conditions in the claim, returns to employment other than his former position of employment and suffers a wage loss.
(2) The employee returns to his former position but suffers a wage loss.
(3) The employee, as a direct result of the allowed conditions in the claim, is unable to find work consistent with the employee's physical capabilities and suffers a wage loss.
 {¶ 38} Amidst this paucity of guidance, both the commission and the courts were grappling with some of the following issues: If a claimant is fired from his job can he ever receive wage loss compensation? What are the consequences for a claimant who accepts part-time employment? If a claimant accepts another job, is later laid off from that job, and accepts other employment, can he receive wage loss compensation? Once a claimant accepts a lower paying job, does the claimant have any obligation to attempt to lessen the wage loss? At the same time, both the commission and the courts were addressing similar issues with regard to the entitlement of claimants to temporary total disability compensation. As a result, certain principals began to emerge. For instance, it was always understood that, in order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but also that a direct and proximate causal relationship existed between the injury and the harm or disability. See State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. In State ex rel. The Andersons v. Indus. Comm.
(1992), 64 Ohio St.3d 539, the court indicated that the above principal is equally applicable to claims for wage loss compensation. In State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118, the court indicated that a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed conditions and the wage loss.
 {¶ 39} Furthermore, although neither R.C. 4123.56(B) nor Ohio Adm. Code 4121-3-32(D) specifically state that, in a non-working wage loss case, a claimant must show a good-faith effort to obtain employment within his physical capabilities, on more than one occasion, this court held that there was some evidence to support a commission decision on the question of whether claimant had demonstrated a good-faith effort to find suitable employment. See, i.e., State ex rel. Porter v. Indus. Comm. (Apr. 28, 1994), Franklin App. No. 93APD05-700, and State ex rel.Frigidaire Co. v. Indus. Comm. (June 23, 1994), Franklin App. No. 93APD06-781. In a non-working wage loss claim, this court held that the commission was required to address in its order the adequacy of the claimant's job search during the claimed wage loss period.
 {¶ 40} For instance, in The Andersons, the claimant had taken a seasonal position with the employer which was understood to last between six and eight months. A claim was recognized for a chemical rash on the claimant's right hand At the end of the season, the claimant was laid off as planned and, because of disciplinary problems, the employer decided not to rehire the claimant the following season. The claimant's rash worsened, he sought medical treatment, and was ultimately released to return to work with the restriction that he avoid chemical exposure. The claimant later became employed again and requested wage loss compensation under R.C. 4123.56(B). The commission awarded wage loss compensation after determining the claimant's average weekly wage ("AWW") by dividing claimant's total earnings for the year prior to the injury by the number of weeks he worked, specifically excluding the period during which the claimant was laid off.
 {¶ 41} Ultimately, the Ohio Supreme Court rejected the employer's argument that the lay-off should bar claimant's entitlement to wage loss compensation. Instead, the court compared eligibility for wage loss compensation with eligibility for temporary total disability compensation and noted that, under certain circumstances, the requisite causal connection may be broken when an employment relationship ends. For example, a voluntary departure severs the causation chain while an involuntary departure, one that is injury induced, does not. SeeState ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42, and State ex rel. Rockwell Internatl. v. Indus. Comm.
(1988), 40 Ohio St.3d 44. The court then cited State ex rel.B.O.C. Group, General Motors Corp. v. Indus. Comm. (1991),58 Ohio St.3d 199, and noted that a lay-off is considered involuntary because it is initiated by the employer and not the employee. Because the court concluded that it was possible that the claimant in The Andersons took the temporary position because it was the only job he could find, the court rejected the employer's argument that the claimant's lay-off automatically barred wage loss compensation.
 {¶ 42} Furthermore, in addressing the claimant's challenge that the commission abused its discretion when it determined his AWW, the court noted that, as a general rule, the commission computes AWW by dividing a claimant's total wages for the year preceding the date of injury by 52 weeks pursuant to R.C.4123.61. However, the court noted that R.C. 4123.61 provides that, in ascertaining the AWW, any period of unemployment due to sickness, industry depression, strike, lockout, or other causes beyond the employee's control shall be eliminated. The court found that the commission did not abuse its discretion by calculating the claimant's AWW by dividing the claimant's total earnings for the year by the number of weeks he worked and specifically excluding the period of time for which he was laid off was proper. To have done otherwise would have created a windfall for the claimant since it would have exceeded any weekly wage received by the claimant while he was working.
 {¶ 43} Later, in State ex rel. Pepsi-Cola Bottling Co. v.Morse (1995), 72 Ohio St.3d 210, the claimant had injured his shoulder and upper back and was awarded both temporary total disability compensation and wage loss compensation. The employer later moved the commission to re-examine the claimant's eligibility for wage loss compensation on the basis that the claimant was working in a lounge owned by his father and earning $150 a week. The claimant's previous AWW while employed by the employer had been approximately $576 a week. One of the employer's arguments addressed by the court concerned the employer's position that the claimant's wage loss was not a result of a medical impairment, but, instead, was the result of the claimant intentionally limiting his income. The court noted that, following a lead of decisions on temporary total disability and impaired-earning capacity, The Andersons implies that voluntary acts that limit earnings can bar wage loss compensation. Although the court rejected the employer's argument in that specific case, the court went on to state, at 216, as follows:
[The employer's] better argument is one that may ultimately prove inherent whenever lower-paying alternate employment underlies a request for wage-loss compensation — the reason for taking the job. This is particularly relevant where the alternate employment is a part-time job, since the combined amount of wages and compensation could produce close to a full-time weekly income for part-time work. Wage-loss compensation was not intended to provide a disincentive to resumption of full-time employment or to subsidize — at the State Insurance Fund's or self-insured employer's expense — a part-time lifestyle. Conversely, if a part-time job is the only work available within a claimant's post-injury capabilities, he or she should not be discouraged from accepting it.
 {¶ 44} The court found that the commission did abuse its discretion by failing to discuss the issue concerning the medical cause of the claimant's disability. The court reaffirmed this position in State ex rel. Reamer v. Indus. Comm. (1997),77 Ohio St.3d 450, by stating that, where compensation is sought pursuant to Ohio Adm. Code 4121-3-32(D), it is necessary to explore the reasons why the particular alternative job was selected.
 {¶ 45} Ohio Adm. Code 4125-1-01 was promulgated and had an effective date of May 15, 1997. In reality, the regulation served to set forth in rule form the current law regarding eligibility for wage loss compensation based upon the Ohio Supreme Court cases cited above, as well as others. Specifically, Ohio Adm. Code4125-1-01 provided guidance for the commission to follow in determining whether a claimant who was fired can ever receive wage loss compensation, as well as helping the commission to determine when a claimant, who has accepted a lower paying job or has accepted part-time employment, can receive wage loss compensation. See, for example, Ohio Adm. Code 4125-1-01(D)(1)(c),4125-1-01(D)(3)(a) through (d), and 4125-1-01(F)(3)(b).
 {¶ 46} Turning to the case at hand, the issue concerns the effect of the development of the case law as well as the ultimate promulgation of Ohio Adm. Code Chapter 4125 on the facts in the present case. First, two things are undisputed in this case: (1) claimant cannot return to her former position of employment; and (2) claimant has voluntarily limited her hours to part-time work for reasons unrelated to the allowed conditions. Second, by applying Ohio Adm. Code 4125-1-01(H)(1) and (3) to the facts of the present case, this magistrate finds that the commission has abused its discretion because that determination ignores the prior Ohio Supreme Court decisions which preceded the promulgation of Ohio Adm. Code Chapter 4125 and would result in a windfall to claimant. In the present case, to award claimant compensation calculated based on the greater of her FWW or AWW would result in a windfall to her. Third, although Ohio Adm. Code4125-1-01(H)(2) provides that this rule shall not apply to the adjudication of entitlement to wage loss compensation for any periods before the effective date of this rule, the case law which is reflected within Ohio Adm. Code Chapter 4125 and the discretion which has always been afforded the commission did apply.
 {¶ 47} In the September 12, 2000 order, the deputy did specifically apply Ohio Adm. Code 4121-1-01(F)(3)(b) which provides as follows:
If the adjudicator finds that the claimant has returned to employment but has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, the adjudicator, for each week of wage loss compensation requested by the claimant, shall determine: the number of hours worked by the claimant in the employment position to which he has returned, and the hourly wage earned by the claimant in the employment position to which he has returned. In such a case, the adjudicator shall order wage loss compensation to be paid at a rate of sixty-six and two-thirds per cent of the difference between:
(i) The weekly wage the claimant would have earned in the former position of employment if the claimant had worked only the number of hours the claimant actually worked each week in the employment position to which the claimant returned; and
(ii) The weekly amount the claimant actually earned in the employment position to which he returned.
 {¶ 48} As such, after finding that claimant could not return to her former position of employment, had accepted employment at a lower hourly rate, and had voluntarily limited the number of hours she was working for reasons unrelated to her allowed conditions, the deputy calculated her wage loss compensation by comparing the weekly wage claimant would have earned in the former position of employment if she had worked only the number of hours she was actually working each week in the new position. In essence, with or without the promulgation of Ohio Adm. Code Chapter 4125, the deputy exercised the discretion the commission has always had and calculated claimant's wage loss in the face of evidence that she had voluntarily limited the number of hours she was working. Although both Ohio Adm. Code 4125-1-01(H)(2) andState ex rel. Carey v. Am. Seaway Foods, Inc. (1999),87 Ohio St.3d 179, indicate that the commission cannot use Ohio Adm. Code Chapter 4125 to calculate wage loss compensation where the date of injury precedes the effective date of the rule, the deputy still had discretion to use an alternate method to determine her AWW. By later finding, in its August 22, 2001 order, that the commission was required, by virtue of Ohio Adm. Code4125-1-01(H)(3) to automatically pay claimant wage loss compensation based upon the greater of her FWW or AWW, the commission ultimately abused its discretion.
 {¶ 49} Based on the foregoing, it is this magistrate's decision that the commission has abused its discretion by determining claimant's wage loss compensation based upon Ohio Adm. Code 4125-1-01(H)(3) and the commission's August 22, 2001 order should be vacated. Furthermore, this magistrate finds that, even though the deputy used Ohio Adm. Code 4125-1-01(F) in calculating the award of wage loss compensation to claimant in the July 12, 2000 order, the alternate method of calculation did not constitute an abuse of discretion where, as here, the commission specifically found that claimant had voluntarily limited the number of hours she was working. As such, a writ of mandamus should issue in the present case ordering the commission to vacate its October 22, 2001 order and the commission should be ordered to reinstate its July 12, 2000 order.
 /S/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE