DECISION
{¶ 1} Relator, Michael J. Filicko, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's request for working wage-loss compensation and to order the commission to issue a new order finding he is entitled to such compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision. In those objections, relator raises many of the same arguments made before the magistrate, including the assertion that the Ohio Supreme Court's decision in State ex rel. Brinkmanv. Indus. Comm. (1999), 87 Ohio St.3d 171, and this court's decision in State ex rel. Borden, Inc. v. Martin, Franklin App. No. 03AP-257, 2004-Ohio-4647, necessitate the issuance of a "limited writ" directing the commission to consider whether relator voluntarily limited his income. The magistrate, however, considered the applicability of those cases and found them distinguishable from the facts of the instant case. More specifically, the magistrate found that relator failed to present evidence that his part-time job had the prospect of becoming a full-time position, as did the claimant in Brinkman, or that he was willing to work more hours if offered to him, as the claimant showed in Borden. Upon review, we agree with the magistrate's analysis that those cases are factually distinguishable from the instant action.
 {¶ 4} We also agree with the magistrate's determination that the commission was not required to consider evidence of the prospect of full-time employment, in the form of an undated statement from University Hospital, where such evidence was not submitted until after the hearings before the District Hearing Officer and Staff Hearing Officer. The commission has discretion whether to accept or reject evidence submitted after a hearing, and we find no abuse of discretion in this case. See State exrel. Cordray v. Indus. Comm. (1990), 54 Ohio St.3d 99, 101.
 {¶ 5} Finally, relator challenges the magistrate's findings as to the average amount of hours he worked per week. Relator maintains, without elaboration, that he averaged more than 21 hours per week over the course of a year rather than the 12-16 hours found by the magistrate. At the outset, we note that in relator's initial brief before the magistrate he did not contend, as he does in his objections, that he averaged more than 21 hours per week; rather, relator indicated that he "worked approximately 15-20 hours per week." Further, we have reviewed the relevant exhibits (employee statement of earnings) contained in the stipulated evidence, and we find the magistrate's determination that relator averaged between 12-16 hours to be accurate.
 {¶ 6} After an examination of the magistrate's decision, as well as an independent review of the record, we overrule relator's objections to the magistrate's decision, finding that the magistrate sufficiently discussed and determined the issues raised by relator. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Sadler and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Michael J. Filicko, : Relator, : :
v. : No. 05AP-369 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Thistledown, Inc., : :
Respondents. : :
 MAGISTRATE'S DECISION Rendered on September 26, 2005 Stephen E. Bloom Co., LPA, Stephen E. Bloom and William S.Leizman, for relator.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
Stefanski Associates, LLC, and Janice T. O'Halloran, for respondent Thistledown, Inc.
 IN MANDAMUS {¶ 7} Relator, Michael J. Filicko, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for working wage loss compensation and ordering the commission to find that he is entitled to that compensation pursuant to State ex rel.Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171.
Findings of Fact:
 {¶ 8} 1. Relator sustained a work-related injury on June 26, 2001, and his claim has been allowed for "contusion left elbow, sprain left shoulder; left shoulder impingement syndrome with tendonitis and inflammation." Ultimately, relator had surgery on his shoulder.
 {¶ 9} 2. At the time of his injury, relator was employed full time as a security guard for respondent Thistledown Racetrack ("employer").
 {¶ 10} 3. On October 28, 2002, relator's treating physician, Dr. Edward Gabelman, reviewed relator's job description as a security officer and opined that he was not able to engage in this type of work because of the potential for having to restrain people or be involved in altercations.
 {¶ 11} 4. On January 15, 2003, Dr. Gabelman indicated that relator could return to his former position of employment but that he could not "engage in fights or restrain a wild horse."
 {¶ 12} 5. By letter dated February 21, 2003, relator was informed that the employer had a 40-hour per week assignment for him within the restrictions set forth by Dr. Gabelman. Specifically, the employer indicated that "[t]here will be no need for you to chase loose horses; and there will be no need for you to break up any physical altercations."
 {¶ 13} 6. In March 2003, relator had shoulder surgery and thereafter, participated in a rehabilitation program.
 {¶ 14} 7. In July 2003, relator began working at University Hospital as a "greeter" working between 12 to 16 hours per week.
 {¶ 15} 8. On or about December 16, 2003, relator filed a C-86 motion seeking wage loss compensation. Relator attached the October 28, 2002 report of Dr. Gabelman, a copy of his former job description, the October 3, 2003 report of Dr. Howard A. Pinski who opined that relator had a ten percent whole person impairment due to his shoulder condition, and a copy of a December 2003 pay stub.
 {¶ 16} 9. Relator's application was heard before a district hearing officer ("DHO") on November 11, 2004, and resulted in an order denying the request as follows:
Working wage loss compensation from 7-26-03 through 7-10-04 is denied. The District Hearing Officer finds that the claimant worked full-time as a security guard at Thistledown. In July of 2003, the claimant started working as a "Greeter" at University Hospital but only 12-16 hours a week. Claimant's physician of record, Dr. Gab[el]man, released claimant to return to work 40 hours per week but limited use of left upper extremity.
The claimant testified that he made no other job search to supplement his part-time job. Furthermore, he did not register with Ohio Bureau of Employment Services.
Therefore, due to the lack of [a] good faith job search and failure to register, the District Hearing Officer denies the motion.
 {¶ 17} 10. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on December 27, 2004. The SHO affirmed the prior DHO order and denied relator's request for working wage loss compensation as follows:
Working wage loss compensation from 07/26/2003 through 07/10/2004 is denied. The Staff Hearing Officer finds that the claimant worked full-time as a security guard at Thistledown. In July of 2003, the claimant started working as a "Greeter" at University Hospital but only 12-16 hours a week. Claimant's physician of record, Dr. Gabelman, released claimant to return to work 40 hours per week but limited use of left upper extremity.
The claimant testified at the District Hearing Officer hearing that he made no other job search to supplement his part-time job. Furthermore, he did not register with Ohio Bureau of Employment Services.
The job search the claimant filed at this time is for a period prior to the 07/26/2003 date the claimant requests wage loss to begin.
The claimant submitted the case of Brinkman v. IndustrialCommission (1999), 87 Ohio St. 3d 171. The Staff Hearing Officer finds the facts distinguishable as the claimant in Brinkman took a part time job with the prospect of the part time job becoming a full time position.
This is distinguishable from the facts at bar.
Therefore, due to the lack of [a] good faith job search and failure to register, the Staff Hearing Officer denies the motion.
 {¶ 18} 11. Thereafter, relator submitted an unsigned letter which was received by the Ohio Bureau of Workers' Compensation ("bureau") on January 12, 2005, from University Hospital containing the following information:
This letter shall confirm that Michael Filicko is a part time employee of ours and works as a greeter at our hospital loca-tion. He started this employment during about July 2003 as a part time job. No full time job was available for him at the time but he did take the job with the prospect of the part time job becoming a full time position.
 {¶ 19} 12. On January 12, 2005, relator appealed from the December 27, 2004 SHO hearing. That appeal was refused by order of the commission mailed January 21, 2005.
 {¶ 20} 13. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 21} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 22} Entitlement to wage loss compensation is governed by R.C. 4123.56(B) which provides, in pertinent part, as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall re-ceive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 23} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but also that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. This principle is equally applicable to claims for wage loss compensation. State ex rel. The Andersons v.Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court inState ex rel. Watts v. Schottenstein Stores Corp. (1993),68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss.
 {¶ 24} In this mandamus action, relator contends that the commission abused its discretion in finding that he had not sought suitable employment which is comparably paying work. Specifically, relator argues that he presented evidence of a good-faith job search by (a) taking a job which paid more per hour than his former job, and (b) presenting evidence that his job could become a full-time position.
 {¶ 25} The purpose of wage loss compensation is to encourage workers to return to gainful employment. State ex rel. Consol.Freightways v. Engerer (1996), 74 Ohio St.3d 241. It is well-settled that a prerequisite to an award of wage loss compensation is proof that the claimant made a good-faith effort to secure comparably paying work but was unable to do so, due to the allowed condition. State ex rel. Chora v. Indus. Comm.
(1996), 74 Ohio St.3d 238.
 {¶ 26} Ohio Adm. Code 4125-1-01(D) provides that the claimant is solely responsible for and bears the burden of producing evidence regarding their entitlement to wage loss compensation. Ohio Adm. Code 4125-1-01(D)(1)(c) states:
A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *. A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 27} Chapter 4125-1 includes pages of relevant factors for determining whether a claimant has made a good-faith effort to secure suitable employment which is comparably paying work to eliminate the wage loss. In considering a claimant's eligibility for wage loss compensation, hearing officers are required to consider the claimant's search for suitable employment which includes, as a prerequisite, registering with the Ohio Bureau of Employment Services and beginning or continuing a job search if no suitable employment is available with the employer of record. See Ohio Adm. Code 4125-1-01(D)(1)(a)(iii). The Ohio Administrative Code provides numerous factors which, if relevant, are to be considered in deciding whether a claimant has made a good faith effort to search for suitable employment, including the following: (1) the claimant's skills, prior employment history, and educational background; (2) the number, quality, and regularity of contacts made by the claimant with prospective employers, public and private employment services; (3) the amount of time devoted to making job contacts during the requested period of compensation as well as the number of hours spent working (when working wage loss is sought); (4) any refusal by the claimant to accept assistance from the bureau or any other public or private employment agency to find employment; (5) labor market conditions including, but not limited to, the numbers and types of employers located in the geographical area surrounding the claimant's place of residence; (6) the claimant's physical capabilities; (7) the claimant's economic status as it impacts on his ability to search for employment; (8) any part-time employment engaged in by the claimant and whether that employment constitutes a voluntary limitation on the claimant's present earnings; (9) whether claimant restricts his search for employment that would require him to work fewer hours per week than he worked in the former position of employment; and (10) as a result of the restrictions arising from the allowed conditions, the claimant is enrolled in a rehabilitation program.
 {¶ 28} It is undisputed by relator that claimants are required to search for suitable employment which is comparably paying work. Further, relator does not disagree with the general rule that, if a claimant takes a lower paying job, the claimant is still required to search for suitable employment which is comparably paying work. However, in the present case, relator argues that he took a job which paid more per hour and he did not voluntarily limit the hours he was working; instead, as the claimant in Brinkman, relator argues he took a part-time job that had the potential of becoming full-time employment. For the reasons that follow, this magistrate finds that the commission did not abuse its discretion.
 {¶ 29} In Brinkman, the claimant was unable to return to his former position of employment and found work within his physical restrictions on a part-time basis. The claimant testified that he was not currently looking for work within his physical restrictions because he had been informed by his employer that he had the potential of going on full-time duty with the employer. The commission concluded that claimant had not demon-strated a good-faith job search for full-time employment.
 {¶ 30} Ultimately, the Supreme Court of Ohio issued a writ of mandamus ordering the commission to award wage loss compensation to the claimant as requested. The court noted that certain post-injury employment must be more carefully scrutinized. Among these are part-time and self-employment. The court noted that these two types of employment can be characterized as voluntary limitations of income.
 {¶ 31} However, in the Brinkman case, the court expanded the focus. Specifically, the court noted as follows:
In this case, the commission is also asking the claimant to" leave a good thing." [Stahl v. Southeastern X-Ray
(Fla.App.-1984), 447 So.2d 399] is admittedly distinguishable in that post-injury employment was full-time, not part-time, but whether that does or should excuse a broader-based analysis is questionable. Wage-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired.
This does not mean that the claimant is entitled to turn down a job as paying too little and still claim wage-loss compensation. Neither, however, should it compel the departure from a lucrative job with full-time potential for menial work simply because the latter is immediately available full-time.
There is no evidence contrary to our claimant's assertion that he took the Busch job because it was the first job — full or part-time — that was offered. Claimant's uncontradicted statements also indicate that part-timers were given preference when full-time slots opened. This supports claimant's assertion that a move to full-time was a realistic possibility.
We find, therefore, that under these facts, the commission abused its discretion in finding a voluntary limitation of income. Viewed in totality, the facts do not establish such a limitation or a life-style-motivated job selection — the two concerns that have prompted close examination of part-time work.
Id. at 174.
 {¶ 32} In the present case, relator did not present any evidence that his part-time job had the prospect of becoming a full-time position as the claimant did in Brinkman. While the record does contain a statement purportedly from University Hospital, that statement is undated and it was not received by the bureau until January 12, 2005. The SHO hearing was held December 27, 2004. There is no evidence that relator presented this letter or any other evidence to either the DHO or SHO. As stated previously, claimant had the burden of establishing entitlement to wage loss compensation. Inasmuch as an appeal from an SHO order to the commission is discretionary, the commission is under no obligation to consider evidence submitted after the SHO hearing but before the final commission order.
 {¶ 33} Relator also cites this court's decision in State exrel. Borden, Inc. v. Indus. Comm., Franklin App. No. 03AP-257,2004-Ohio-4647, wherein this court issued a limited writ of mandamus instructing the commission to conduct a new hearing on whether the claimant had voluntarily limited her work hours for reasons unrelated to her injury. In Borden, the claimant had testified that she worked as many hours as were made available to her and that she was ready to work full time. In Borden, the claimant was averaging 33 hours per week.
 {¶ 34} In the present case, relator has not presented any evidence that he, like the claimant in Borden, was willing to work more hours if they were offered to him. Furthermore, working 33 hours per week is significantly different from working 12 to 16 hours per week.
 {¶ 35} Based on the foregoing, the magistrate finds that relator has not demonstrated that the commission abused its discretion by denying his application for working wage loss compensation and this court should deny relator's request for a writ of mandamus.