DECISION
{¶ 1} Relator, Wesley E. Whatley ("relator"), filed this original action requesting issuance of a writ of mandamus directing respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him wage loss compensation, and to issue an order finding that he is entitled to that compensation. *Page 2 
 {¶ 2} We referred this matter to a magistrate pursuant to Rule 12(M) of this court and Civ.R. 53. The magistrate issued a decision dated February 22, 2007 (attached as Appendix A) denying the requested writ. Relator filed objections to the magistrate's decision, arguing essentially the same issues as had been raised before the magistrate. Memoranda in opposition to those objections were filed by the commission and by the employer, respondent Swift Transportation Company.[1]
 {¶ 3} In his objections, relator argues: (1) the magistrate erroneously concluded that relator was required to register with the Ohio Bureau of Employment Services or its equivalent in the state of California as a prerequisite to claiming wage loss compensation, (2) the magistrate erroneously concluded that there was some evidence supporting the commission's conclusion that relator failed to conduct a good-faith job search, and (3) the magistrate erroneously concluded that relator had failed to provide adequate evidence of his ongoing medical status.
 {¶ 4} Following our independent review, we find that the magistrate properly determined the facts and correctly applied the appropriate law. Consequently, we overrule relator's objections, and adopt the magistrate's decision as our own including the findings of fact and conclusions of law contained therein. Therefore, the writ requested by relator is denied.
Objections overruled, writ denied.
 KLATT and McGRATH, JJ., concur. *Page 3 
 APPENDIX A IN MANDAMUS MAGISTRATE'S DECISION {¶ 5} Relator, Wesley E. Whatley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 4 
("commission") to vacate its order which denied him wage loss compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 6} 1. Relator worked as a truck driver for respondent Swift Transportation Co. ("employer"). Relator sustained a work-related injury on July 14, 2003, while loading and unloading a trailer. Relator's workers' compensation claim has been allowed for "right posterior horn medial meniscus tear."
 {¶ 7} 2. Relator has received temporary total disability ("TTD") compensation as a result of his injuries.
 {¶ 8} 3. In November 2003, relator moved to California and began treating with Ju-Sung Wu, M.D.
 {¶ 9} 4. Relator underwent surgery on his knee on March 25, 2004. Following the surgery, relator pursued vocational rehabilitation involving television and film editing. During this time, relator was receiving TTD compensation.
 {¶ 10} 5. Relator was examined by G.B. Ha'Eri, M.D. In his November 5, 2004 report, Dr. Ha'Eri opined that relator's allowed knee condition had reached maximum medical improvement ("MMI"), that he could return to his former position of employment as a truck driver provided that he lift nothing heavier than 50 pounds, and that he refrain from repeated squatting and kneeling.
 {¶ 11} 6. On January 26, 2005, Dr. Wu completed a physicial capacities form wherein he indicated that relator could sit and stand for up to two hours during an eight-hour day and that he could walk for up to one hour during an eight-hour day; relator could continuously lift up to ten pounds, frequently lift up to 25 pounds, occasionally lift *Page 5 
or carry up to 50 pounds, but never lift over 50 pounds; relator could occasionally bend and crawl but relator could not squat; and relator was precluded from using his right foot for repetitive movements of leg controls. Dr. Wu also indicated that the restrictions were permanent and that he had last examined relator on January 24, 2005.
 {¶ 12} 7. Thereafter, the commission determined that relator had reached MMI and his TTD compensation was terminated as of February 17, 2005.
 {¶ 13} 8. Relator filed an application for wage loss compensation in April 2005. Relator attached the January 26, 2005 physical capacities form completed by Dr. Wu as well as evidence of the work he had been performing. Unfortunately, the copies included in the record before this court are somewhat difficult to read. The magistrate found it helpful to note that at the first hearing on relator's application for wage loss compensation, held before a district hearing officer ("DHO") on July 13, 2005, the DHO specifically listed the evidence which was presented regarding relator's employment when the DHO found that relator had presented sufficient evidence justifying the payment of wage loss compensation. The DHO stated:
 * * * On 02/26/2005, the claimant began a full-time salaried position with Covenant Players. The claimant had previously worked as a Director of Marketing for Covenant Players between January of 1984 and January of 2001. As of 02/26/2005, the claimant began working as a Communications Director which the District Hearing Officer finds is a position within his work restrictions.
 Documentation of the claimant's earnings reveals that he earns $210.00 per week for five day[s] of work. David J. Kitch, Treasurer for Covenant Players, revealed in his 05/23/2005 letter that the reference to "units" on pay stubs is to "number of days in a given pay period." The claimant's 07/01/2005 letter and his sworn statement on a C-94-A reveals that his weekly income should be considered to be *Page 6 
$335.00 because of economic value related to the use of a car ($75.00) and child care ($50.00) per week.
 The District Hearing Officer finds, based upon the claimant's letter (07/01/2005) and payment records, that the claimant also worked as an independent contractor for production and entertainment companies during the period in which working wage loss compensation is being awarded. For instance, the claimant worked as a consultant for Lincoln Christian College (in Lincoln, Illinois) from 05/05/2005 and 05/07/2005 and earned $551.00. On 05/25/2005, the claimant worked performing "voiceover editing" for Parrot Works and earned $250.00.
 {¶ 14} The DHO also determined that relator was engaged in a good-faith effort to obtain additional income to offset or eliminate his wage loss, as follows:
 The District Hearing Officer further finds that the claimant is engaged in a good faith effort to obtain additional income that would offset (or eliminate) his wage loss. The claimant's letter and his job search logs reveal that the claimant is willing to travel long distances to obtain this work. The District Hearing Officer has reviewed the claimant's job search logs and finds that the claimant continues to search for additional work as an editor, director, production coordinator, and other positions in the entertainment industry. It appears that this extra effort to find other work is benefiting the claimant as he states that he was contacted by Lincoln Christian College in early June of 2005 to perform additional directing and filming.
 {¶ 15} 9. Relator's application was heard before a DHO on July 13, 2005. First, the DHO determined that relator could not return to his former position of employment based upon the November 5, 2004 report of Dr. Ha'Eri and the restrictions of Dr. Wu. Further, the DHO noted that it had been determined that relator had reached MMI. Thereafter, the DHO denied relator wage loss compensation for the period February 18 through February 25, 2005, on the basis that relator did not immediately begin a job search following the termination of his TTD compensation on February 17, 2005. *Page 7 
Futhermore, the DHO concluded that there was no documentation supporting a good-faith job search effort during that time period. However, as noted in finding of fact number eight, the DHO did determine that relator was entitled to wage loss compensation from February 26 through June 3, 2005, based upon the evidence that the magistrate noted in the above finding of fact.
 {¶ 16} 10. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on August 31, 2005, and resulted in an order vacating the prior DHO order in its entirety. The SHO denied wage loss compensation in its entirety for the following reasons:
 OAC 4125-1-01(D)(1)(a) sets forth three mandatory prerequisites to receiving wage loss compensation. OAC 4125-1-01(F)(5) states that regardless of whether a claimant is otherwise qualified to receive wage loss benefits for any period of time, wage loss benefits shall not be awarded for any period before the date of compliance with (D)(1)(a). (a)(iii) requires a demonstration that the injured worker registered with the Ohio Bureau of Employment Services (now ODJFS) if suitable employment is not available with the employer of record. The claimant's affidavit of 08/22/2005 states no suitable employment was available with the instant employer, although the claimant further states he sought such employment. As section (D)(1)(a) is a mandatory prerequisite, there must be evidence of registration with OBES. The file contains no such such [sic] evidence. The claimant currently resides in California. There is no evidence of constructive compliance by submitting evidence of registration with the California equivalent of OBES. Therefore, wage loss is denied as described.
 {¶ 17} 11. Relator's further appeal was refused by order of the commission mailed October 19, 2005.
 {¶ 18} 12. Relator filed another application for wage loss in November 2005, and submitted additional evidence with his application. *Page 8 
 {¶ 19} 13. The matter was heard before a DHO on January 19, 2006, and resulted in an order granting relator wage loss compensation for the period of June 4 through November 7, 2005, for the following reasons:
 The evidence reveals that the injured worker has permanent restrictions which prevent him from returning to his former position of employment as a truck driver. According to the injured worker's affidavit, he has been working with Covenant Players since the age of 18 as an actor/director. The injured worker works 5 days a week, 5 hours per day. The injured worker has secured full time employment at Covenant Players, and is earning $350.00 per week. In addition to this employment, the injured worker continues to send out resumes for additional employment. The evidence reveals that the injured worker has experience in the entertainment business and is continuing to search for employment within this field.
 From 06/05/2005 to 06/11/2005 the injured worker again secured a contract for work with Lincoln Christian College, directing and filming four episodes of a local TV show and earned $2002.00. On 06/28/2005, the injured worker earned $250.00 for editing a `demo reel'. For the week of 08/17/2005, the injured worker performed additional film work for Digital Tattoo and earned $636.00. On 08/19/2005 the injured worker secured a contract with Bob Gebert to work on audio for a feature film earning $600.00 per day. Lastly, the District Hearing Officer notes that the injured worker secured a contract with Tatu Media to produce approximately 25 courses and translate course material from English to Spanish. The injured worker earned $400.00 per course for translation less money paid to the translator, netting approximately $120.00 to $180.00 per course. The injured worker is also charging $500.00 for voiceover work and editing, less expenses, he netted $350.00 to $450.00 per course.
 The District Hearing Officer finds that the evidence reveals that from 06/04/2005 to 11/07/2005 the injured worker's employment with Convenant Players and his self-employment produce total net earning of $13,907.72 which average out to be $632.72 per week. As a result, the District Hearing Officer finds that the injured worker suffered a loss *Page 9 
of earnings during this time period. Accordingly, it is ordered that working wage loss for the above period is granted.
 The District Hearing Officer relies on the numerous job searches performed by the injured worker, his affidavit, as well as the C-140's dated 01/26/2005 and 08/25/2005.
 {¶ 20} 14. The employer appealed and the matter was heard before an SHO on March 20, 2006. The SHO vacated the prior DHO order in its entirety and denied the entire period of wage loss compensation for the following reasons:
 The Staff Hearing Officer denies the request for Working Wage Loss compensation from 06/04/2005 through 03/20/2006 (today's date). The Staff Hearing Officer does not find the claimant is entitled to wage loss compensation per OAC 4125-1-01. The Staff Hearing Officer finds a lack of competent medical evidence demonstrating the medical/physical restrictions due to the allowances of this claim. The claim [sic] has not been examined by Dr. Wu, since 01/24/2005 when Dr. Wu provided the initial physical restrictions (for a prior wage loss application which was previously denied per a 08/31/2005 Staff Hearing Officer order).
 There are no update restrictions via examination with Dr. Wu. Dr. Wu merely indicates on the current C-140 dated 08/25/2005 that the claimant was last examined on 01/24/2005 and has the same restrictions that were listed on the C-140 dated 01/26/2005. Per OAC 4125-1-01 (C)(3), supplemental medical reports regarding "ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted" to the Bureau of Workers' Compensation once every 180 days after the initial application. The C-140 dated 08/25/2005, is not found competent as Dr. Wu was not able to assess the medical restrictions "ongoing status" since he has not examined the claimant since 01/24/2005. In addition, the physical restrictions dated 08/25/2005 on the C-140 were over 180 days from the prior restrictions dated 01/26/2005 and were not contemporaneous with this current wage loss request commencing 06/04/2005. *Page 10 
 In addition, per OAC 4125-1-01(C)(5) the claimant must supplement their wage loss application with descriptions of searches for suitable work. The claimant produced evidence of emails sent to various individuals on specific days but the evidence of job search efforts did not demonstrate a consistent and sincere effort to seek suitable work of comparable pay. The claimant only sought employment with the entertainment industry but did not expand his job search efforts to all of the positions within his physical restrictions per OAC 4125-1-01(D)(1)(b) and (a).
 The Staff Hearing Officer relies upon the job search document from 08/09/2005 through 11/30/2005, the pay records from Covenant Players and other sporadic positions, C-94-A on file.
 In addition, the Staff Hearing Officer notes that there were no wages from Covenant Players from 06/25/2005 through 08/21/2005. The Staff Hearing Officer notes that Covenant Players was a part-time job yet the amount of time the claimant made to search for comparable paying suitable employment is not found to be reasonable per OAC 4125-2-01(D)(1)(C)(2)(b).
(Emphasis sic.)
 {¶ 21} 15. Relator's further appeal was refused by order of the commission mailed April 15, 2006.
 {¶ 22} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 23} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. *Page 11 
 {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 25} Entitlement to wage loss compensation is governed by R.C.4123.56(B) which provides:
 Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 26} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452. This *Page 12 
principle is equally applicable to claims for wage loss compensation.State ex rel. The Andersons v. Indus. Comm. (1992), 64 Ohio St.3d 539. As noted by the court in State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118, a wage loss claim has two components: a reduction in wages, and a causal relationship between the allowed condition and the wage loss.
 {¶ 27} The purpose of wage loss compensation is to encourage workers to return to gainful employment. State ex rel. Consol. Freightways v.Engerer (1996), 74 Ohio St.3d 241. It is well-established that a prerequisite to an award of wage loss compensation is proof that the claimant made a good-faith effort to secure comparable paying work, but was unable to do so due to the allowed conditions. State ex rel. Chorav. Indus. Comm. (1996), 74 Ohio St.3d 238.
 {¶ 28} Ohio Adm. Code 4125-1-01(D) provides that the claimant is solely responsible for and bears the burden of producing evidence demonstrating their entitlement to wage loss compensation. Unless the claimant meets this burden, wage loss compensation will be denied.
 {¶ 29} When considering whether a claimant is eligible for wage loss compensation, the commission is required to give consideration to, and base the determination on, evidence in the file, or presented at hearing, concerning certain factors including the claimant's search for suitable employment. Specifically, a claimant must demonstrate, as a prerequisite to receiving wage loss compensation, the following: (1) that the claimant complied with paragraphs (C)(2) and (3) which pertain to the medical evidence a claimant must submit; (2) that the claimant sought suitable employment with the employer; and (3) that the claimant registered with the Ohio *Page 13 
Bureau of Employment Services and has begun or continued a job search. (Only the first and third factors are at issue in the present case.)
 {¶ 30} With regard to the first prerequisite, Ohio Adm. Code4125-1-01(C) provides, in relevant part:
 (2) A medical report shall accompany the application. The report shall contain:
 (a) A list of all restrictions;
 (b) An opinion on whether the restrictions are permanent or temporary;
 (c) When the restrictions are temporary, an opinion as to the expected duration of the restrictions;
 (d) The date of the last medical examination;
 (e) The date of the report;
 (f) The name of the physician who authored the report; and
 (g) The physician's signature.
 (3) Supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the bureau of workers' compensation or the self-insured employer in self-insured claims once during every ninety day period after the initial application, if the restrictions are temporary, or once during every one hundred eighty day period after the initial application, if the medical restrictions are permanent. The supplemental report shall comply with paragraph (C)(2) of this rule.
 {¶ 31} Concerning the third factor, the claimant must provide evidence of his attempts to minimize the wage loss by seeking suitable employment. Specifically, Ohio Adm. Code 4125-1-01 (D)(1)(c) provides:
 A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss *Page 14 
who have not returned to suitable employment which is comparably paying work[.] * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 32} Two separate periods of wage loss compensation are at issue in the present case. The commission denied relator's request for wage loss compensation from February 18 through June 3, 2005, on grounds that relator had failed to comply with Ohio Adm. Code 4125-1-01 (D)(1)(iii) because he failed to register with the California Bureau of Employment Services. Relator argues that his failure to register with the California equivalent of the Ohio Bureau of Employment Services is irrelevant because he was working. However, the language of the Ohio Administrative Code Section makes it clear that claimants are required to meet these requirements. Furthermore, in State ex rel. Moten v.Indus. Comm., Franklin App. No. 02AP-1260, 2003-Ohio-4573, and State exrel. Filicko v. Indus. Comm., Franklin App. No. 05AP-369, 2006-Ohio-700, this court has stated that the commission does not abuse its discretion when it denies wage loss compensation based upon a claimant's failure to meet these requirements.
 {¶ 33} Furthermore, the fact that relator was working would not necessarily guarantee that he had established entitlement to wage loss compensation. Ohio Adm. Code 4125-1-01 (D)(1)(c) includes relevant factors for determining whether a claimant has made a good-faith effort to secure suitable employment which is comparably paying work to eliminate the wage loss. The commission may consider the following factors: (1) the claimant's skills, prior employment history, and educational background; (2) the number, quality and regularity of contacts made by the claimant *Page 15 
with prospective employers, public and private employment services; (3) the amount of time devoted to making job contacts during the requested period of compensation as well as the number of hours spent working (when working wage loss is sought); (4) any refusal by the claimant to accept assistance from the bureau or any other public or private employment agency to find employment; (5) labor market conditions; (6) the claimant's physical capabilities; (7) the claimant's economic status as it impacts on his ability to search for employment; (8) any part-time employment engaged in by the claimant and whether the employment constitutes a voluntary limitation on the claimant's present earnings; (9) whether claimant restricts his search for employment that would require him to work fewer hours per week than he worked in the former position of employment; and (10) as a result of the restrictions arising from the allowed conditions, the claimant is enrolled in a rehabilitation program. Clearly, although relator was employed in some capacity, he still bore the burden of presenting evidence that he had made a good-faith effort to eliminate the wage loss. The commission did not abuse its discretion in determining that claimant's failure to register with the bureau of employment services was a sufficient reason to deny this period of wage loss compensation since it could have led to other job opportunities.
 {¶ 34} The commission also denied relator wage loss compensation for the period of June 4, 2005 through March 2, 2006, on three grounds: (1) relator's failure to submit medical evidence relating to the ongoing status of his conditions; (2) his failure to submit supplemental evidence concerning his search for suitable employment; and (3) his failure to present sufficient evidence concerning his attempts to secure employment *Page 16 
specifically from August 9 through November 30, 2005, when it was apparent that he was engaged in only part-time work during that time.
 {¶ 35} With regard to the first, relator contends that Dr. Wu's January 26, 2005 physical capacities form indicating that his restrictions were permanent should be sufficient evidence that he continued to remain disabled due to the allowed conditions. Relator argues that this January 26, 2005 physical capacities evaluation constitutes some evidence that his allowed conditions continued to render him disabled. Further, relator points to the August 25, 2005 physical capacities evaluation signed by Dr. Wu and indicating the same restrictions as noted in January 2005. Relator also states in his brief that Dr. Wu actually did examine him at this time. However, as indicated in the findings of fact, on the August 25, 2005 physical capacities evaluation, Dr. Wu specifically indicated that he had last examined relator on January 26, 2005. Although Dr. Wu set out the same restrictions, there was no evidence that Dr. Wu had recently seen relator. Although the code provision does not explicitly state that a new examination must occur, the magistrate finds that the commission did not abuse its discretion when it determined that the August 25, 2005 physical capacities evaluation was not some evidence of relator's ongoing medical status. As such, the commission did not abuse its discretion in finding that relator did not present contemporaneous medical evidence of his ongoing disability due to the allowed conditions.
 {¶ 36} Furthermore, as noted earlier, relator's failure to continue to search for suitable employment which would eliminate the wage loss, even while he was working, is a factor which the commission is entitled to consider. Relator contends that the commission's focus in the present case was too narrow in scope in contravention of the *Page 17 
Supreme Court of Ohio's decision in State ex rel. Brinkman v. Indus.Comm. (1999), 87 Ohio St.3d 171. However, in Brinkman, the claimant had secured part-time work earning $20 per hour, was receiving increases in both wages and responsibility, and there was evidence claimant would be moved to full-time work. The court found that the commission abused its discretion when it found that claimant had voluntarily limited his income.
 {¶ 37} This case is distinguishable from Brinkman largely because the commission found that relator failed to meet his burden of proof. While relator did provide evidence concerning his job search, the commission found that he did not establish a good-faith job search, in part because relator limited his job search. Furthermore, the commission determined that relator did not present sufficient evidence concerning a search for suitable employment from August 9 through November 30, 2005, when the evidence indicates that he was only working part-time. Relator's failure to submit contemporaneous medical evidence and his failure to submit supplemental evidence concerning his job search constitute valid reasons for the commission to deny him wage loss compensation.
 {¶ 38} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying him wage loss compensation and relator's request for a writ of mandamus should be denied.
[1] Swift Transportation Company argues that relator's objections should not be considered because the objections were not timely filed. Whether or not the objections were timely filed, we will nevertheless address the merits of the objections since no prejudice results from that consideration. *Page 1